No. 24-40705

IN THE
# United States Court of Appeals for the Fifth Circuit

Texas Bankers Association; Rio Bank, McAllen, Texas; American Bankers Association; Texas First Bank; Independent Bankers Association of Texas; Independent Community Bankers of America,
*Plaintiffs-Appellants,*

v.

Consumer Financial Protection Bureau; Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau,
*Defendants-Appellees,*

v.

Texas Farm Credit; Farm Credit Council; Capital Farm Credit,
*Intervenor Plaintiffs-Appellants,*

v.

XL Funding, L.L.C.; Equipment Leasing and Finance Association; Rally Credit Union; Credit Union National Association; Cornerstone Credit Union League,
*Intervenors-Appellants.*

---

On Appeal from the United States District Court for the Southern District of Texas, No. 7:23-cv-144
Hon. Randy Crane

---

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY PENDING APPEAL**

Joseph J. Reilly
TROUTMAN PEPPER HAMILTON
  SANDERS LLP
401 9th St NW
Suite 1000
Washington, DC 20004
joseph.reilly@troutman.com

*Counsel for Intervenor-Plaintiffs Appellants Texas Farm Credit, Farm Credit Council and Capital Farm Credit*

Owen Colin Babcock
Alan Bartlett Padfield
Kelsey Nicole Linendoll
PADFIELD & STOUT, LLP
100 Throckmorton Street
Suite 700
Fort Worth, TX 76102
abp@padfieldstout.com

*Counsel for Intervenors-Appellants XL Funding, LLC d/b/a Axle Funding, LLC, Equipment Leasing and Finance Corporation*

Sarah J. Auchterlonie
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
sja@bhfs.com

*Counsel for Intervenors-Appellants Rally Credit Union,*

Robert M. Loeb
John Coleman
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 339-8400
rloeb@orrick.com

Nicholas González
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071

John C. Sullivan
S|L LAW PLLC
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104

James J. Butera
Ryan Israel
MEEKS, BUTERA & ISRAEL PLLC
2020 Pennsylvania Ave., NW
Washington, DC 20006

*Counsel for Plaintiffs-Appellants Texas Bankers Association, Rio Bank, and American Bankers Association*

Thomas Pinder
Andrew Doersam
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Ave., NW
Washington, DC 20036

*Credit Union National Association and Cornerstone Credit Union League*

*Counsel for Plaintiffs-Appellants American Bankers Association*

Elbert Lin
HUNTON ANDREWS KURTH, L.L.P.
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
elin@hunton.com

Erica N. Peterson
HUNTON ANDREWS KURTH, L.L.P.
2200 Pennsylvania Avenue, NW
Washington, DC 20037

James Winford Bowen
HUNTON ANDREWS KURTH, L.L.P.
Suite 3700
1445 Ross Avenue
Fountain Place
Dallas, TX 75202

*Counsel for Plaintiffs-Appellants Texas First Bank, Independent Bankers Association of Texas, Independent Community Bankers of America*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................ 1

ARGUMENT ...................................................................................... 1

I. Plaintiffs Are Likely To Succeed On The Merits. .......................... 1

    A. Plaintiffs are likely to succeed in their argument that the CFPB rule exceeds the CFPB's statutory authority. ....... 1

    B. Plaintiffs are also likely to succeed on appeal based on their argument that the CFPB's new rule is arbitrary and capricious. ................................................................... 5

II. Plaintiffs Will Be Irreparably Harmed. .......................................... 7

III. The Balance Of Equities Heavily Favors A Stay. ......................... 9

CONCLUSION .................................................................................. 10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Epic Sys. Corp. v. Lewis*,
 584 U.S. 497 (2018) .................................................................................. 4

*In re NTE Conn., LLC*,
 26 F.4th 980 (D.C. Cir. 2022) ................................................................... 6

*Wages & White Lion Invs., L.L.C. v. FDA*,
 16 F.4th 1130 (5th Cir. 2021) .................................................................... 8

## Statutes

15 U.S.C. § 1691c-2 ................................................................................. 1, 2

15 U.S.C. § 1691c-2(e)(1) ..........................................................................2, 3

15 U.S.C. § 1691c-2(e)(2) ..................................................................... 2, 3, 4

15 U.S.C. § 1691c-2(e)(2)(H) .................................................................... 2, 4

15 U.S.C. § 1691c-2(e)(4) ............................................................................ 2

15 U.S.C. § 1691c-2(f)(3)(B) ....................................................................... 2

## Other Authorities

Antonin Scalia & Bryan A. Garner, *Reading Law: The*
 *Interpretation of Legal Texts* (2012) ....................................................... 4

# INTRODUCTION

Equity and common sense all favor granting the requested relief. As detailed in the opening stay motion, a stay pending resolution of this expedited appeal is fully warranted. All of the relevant factors strongly support the requested stay. As detailed below, the CFPB's contrary arguments fail to grapple with Plaintiffs' arguments and lack merit. Moreover, granting a stay avoids the senselessness of imposing irreparable harms on Plaintiffs during this expedited appeal when the new presidential administration may in the interim modify or revoke the CFPB's unlawful rule.

# ARGUMENT

## I. Plaintiffs Are Likely To Succeed On The Merits.

### A. Plaintiffs are likely to succeed in their argument that the CFPB rule exceeds the CFPB's statutory authority.

As detailed in the stay motion (Mot. at 13-19), the CFPB exceeded its authority by promulgating a rule requiring lenders to collect pricing information when Section 1691c-2's plain language and structure show that Congress wanted the CFPB to collect only information contained within the loan application and the underwriting decision on that loan application. In opposing the stay, the CFPB attempts to argue (at 11-

1

12) that Plaintiffs "waived" this statutory argument. But the statutory argument Plaintiffs press here is in no way new. Plaintiffs have consistently maintained that the CFPB exceeded its statutory authority by requiring pricing information because the structure of the statute is such that 15 U.S.C. § 1691c-2(e)(2)(H) only permits the CFPB to obtain "information provided by the applicant, or the type of action taken by the financial institution." *E.g.*, ECF No. 79 at 27. The claim of waiver is simply absurd.

On the merits, the CFPB contends that because pricing information can be "related to a lender's underwriting decision," the CFPB has license under the statute to collect and publicly disclose such data. Opp. at 2, 14. But that ignores the statute's language. Section 1691c-2 limits lenders' obligation to "compile and maintain" information under subsection (e)(1) to "information provided by any loan applicant" and then subsection (e)(2) refers to that "information provided" to enumerate the kind of data that a lender must "itemize[]" and share with the CFPB (which can then, in its discretion, make the information public, *see* 15 U.S.C. §§ 1691c-2(e)(4) and 1691c-2(f)(3)(B)). By its plain terms, except as otherwise expressly provided, the power to collect data

2

under subsection (e)(2) is *limited* to the data submitted by the loan applicant, referred to in subsection (e)(1).

In other words, lenders' obligation to collect and disclose data under this section is limited to: "Information compiled and maintained under paragraph (1)," 15 U.S.C. § 1691c-2(e)(2)—*i.e.*, the "the information provided by any loan applicant pursuant to a request under subsection (b)," *id.* § 1691c-2(e)(1), and the list of such data in paragraph (e)(2) illuminates what kind of data qualifies. Not surprisingly, each and every part of the paragraph's list enumerates data points that concern the loan application and the underwriting decision on that loan application. *See* Mot. at 15 (listing the data points).

Thus, contrary to the CFPB's expansive view of its powers, it cannot force lenders to collect everything that potentially "relates" to an underwriting decision so that it can be disclosed by the CFPB. Rather, a lender's obligation is limited to "the information provided by any loan applicant pursuant to a request under subsection (b)," *id.* § 1691c-2(e)(1), which the statute then explains includes various data points with respect to the application and the underwriting decision on that

application, *id.* § 1691c-2(e)(2). None of that speaks to the sensitive non-public pricing information the CFPB plans to collect and disclose en masse.

The CFPB argues that the statute grants it the power to require lenders to itemize and disclose to it "*any* additional data that the *Bureau* determines would aid in fulfilling the purposes of this section." Opp. at 2 (internal quotation marks omitted). The notion appears to be that anything goes so long as the CFPB subjectively thinks it will help achieve the statute's purposes. But Congress did not give the CFPB carte blanche authority. Rather, the statute's plain language and context are properly read as providing only the power to require lenders to itemize and disclose certain categories of information "provided by any loan applicant," not anything the CFPB wants.

Under the established *ejusdem generis* canon, when "general words" "follow an enumeration of two or more things," the general words "apply only to … things of the same kind or class specifically mentioned." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 199 (2012); *accord Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 512-13 (2018). That requires reading subsection (e)(2)(H)

as likewise speaking to data regarding loan origination, and not an open-ended license to collect and make public all data that the CFPB might desire.

As explained in the motion (Mot. at 17-19), pricing data for business loans is not within the categories addressed by Congress. And if Congress had meant to cover such data, it would not have allowed unlimited public disclosure of such non-public sensitive information.

Thus, as a minimum, Plaintiffs have a strong statutory argument that fully supports granting the requested stay.

**B.  Plaintiffs are also likely to succeed on appeal based on their argument that the CFPB's new rule is arbitrary and capricious.**

Plaintiffs also have a strong argument (Mot. at 19-25) that the CFPB's cost analysis was arbitrary and capricious by thwarting efforts to collect data and failing to meaningfully respond to concerns about litigation costs. The CFPB blinded itself to necessary, accurate data before promulgating the rule based on incomplete and inapposite data that painted a rosy picture of the rule's costs. Even though the Small Business Administration's Office of Advocacy suggested extending the comment period so the regulated community could supply accurate cost

data, the CFPB refused, choosing to promulgate the rule based on data it *admitted* was incomplete. Mot. at 20-22. Tellingly, the CFPB has no meaningful response and never even grapples with these key arguments in its stay opposition.

The CFPB also offers no real answer to the argument that it failed to meaningfully respond to concerns about litigation costs. Mot. at 24-25. The CFPB acknowledged the risk that "financial institutions may need to defend against some increased litigation about their small business lending practices." AR.000323. But the CFPB failed to heed those costs or to mitigate them. Its only response was to say the increased data collected may help lenders "defend against such litigation." AR.000323. That is not a meaningful response. *See In re NTE Conn., LLC*, 26 F.4th 980, 989 (D.C. Cir. 2022) ("failure to respond meaningfully … [renders the agency's cost analysis] arbitrary and capricious" (internal quotation marks omitted)).

Thus, this argument too provides a substantial basis for appeal and supports the grant of the requested stay.

## II. Plaintiffs Will Be Irreparably Harmed.

There can be little debate that Plaintiffs will suffer irreparable harm absent a stay. The CFPB insinuates (at 18) that Plaintiffs' evidence of irreparable harm has gone stale. But the record shows the opposite: Plaintiffs have steadfastly and promptly challenged the rule here with the aim of *avoiding the costs stemming from this unlawful rule*, which Plaintiffs' declarations explained will cost each lender anywhere from $100,000 to $250,000 in compliance costs. ECF No. 25 at 7-8.

It is no response to speculate, as the CFPB does (at 18-19), that because *some* lenders may have expended *some* funds to prepare to comply, a stay is not necessary to avoid irreparable harm. As the deadlines for compliance now approach, Plaintiffs are seeking a stay pending this expedited appeal precisely to avoid the irreparable harms they would have to incur to be in full compliance with the rule with enough time to satisfy the impending deadlines. A stay is particularly important for medium and smaller lenders, who do not have the same resources as larger lenders.

And the CFPB is wrong to suggest (at 17-18) that because *some* costs *could* be lawfully imposed if the rule had been written differently the costs imposed by the challenged rule are not irreparable. The rule, as explained above, is requiring the collection and maintenance of entire categories of information that are not covered by the statute. Requiring lenders to set up expensive systems to collect and maintain that data, train personnel, and risk unfounded litigation is contrary to the statute and improperly imposes irreparable harm. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021).

The CFPB faults Plaintiffs for not seeking an injunction from the district court when an earlier injunction expired while summary-judgment briefing was underway. Opp. at 19-20. But Plaintiffs have always moved expeditiously to challenge the rule and prevent their irreparable harm. Summary-judgment briefing was already well underway when the earlier injunction expired and an order with the possibility of vacating the final rule was only weeks away, *see* ECF Nos. 95-96, 97-98. Once the district court denied Plaintiffs' challenge, ECF No. 115, Plaintiffs immediately filed this appeal, sought expedition, and filed motions for a stay first in the district court and then in this Court

8

(when the district court failed to act).[1] Thus, Plaintiffs have acted promptly and taken all reasonable actions to avoid the looming irreparable harm.

### III. The Balance Of Equities Heavily Favors A Stay.

Finally, as explained in the stay motion, the balance of the equities strongly favors granting the requested stay.

It is no answer to say, as the CFPB does (at 21), that some lenders may have already expended compliance costs to comply with the CFPB's unlawful rule. Any already-incurred costs stem from the *CFPB's unlawful actions*. That a few lenders may have already suffered irreparable harm does nothing to eliminate the irreparable harm that Plaintiffs (and others) stand to suffer absent a stay.

The imminent irreparable harm Plaintiffs will face from the costs of complying with the rule far outweighs any harm from postponing compliance deadlines by a few months. That is particularly true here given that the CFPB never displayed any sense of urgency in implementing Section 1071. Quite the opposite: The CFPB waited *over*

---

[1] On November 14, 2024, the district court denied the stay motion. ECF No. 129.

*a decade* to propose the rule. A few more months to allow this expedited appeal to resolve the matter imposes no meaningful harm to the government or the public. Thus, this Court should grant the requested stay and toll the deadlines until this Court resolves this appeal.

Moreover, granting a stay avoids the senselessness of imposing these irreparable harms on Plaintiffs during this expedited appeal when the new presidential administration may in the interim modify or revoke the CFPB's unlawful rule. Equity and common sense all favor granting the requested relief while allowing the expedited appeal and any change from the new administration to play out over the next several months.

## CONCLUSION

For the reasons above, and those set out in the opening motion, this Court should issue a stay, tolling the CFPB's compliance deadlines pending resolution of this expedited appeal.

Respectfully submitted,

| | |
|---|---|
| */s/Joseph J. Reilly* | */s/Robert M. Loeb* |
| Joseph J. Reilly | Robert M. Loeb |
| TROUTMAN PEPPER HAMILTON   SANDERS LLP | John Coleman |
| | ORRICK, HERRINGTON &   SUTCLIFFE LLP |
| 401 9th St NW | |

10

Suite 1000
Washington, DC 20004
joseph.reilly@troutman.com

*Counsel for Intervenor-Plaintiffs Appellants Texas Farm Credit, Farm Credit Council and Capital Farm Credit*

/s/ Owen Colin Babcock
Owen Colin Babcock
Alan Bartlett Padfield
Kelsey Nicole Linendoll
PADFIELD & STOUT, LLP
100 Throckmorton Street
Suite 700
Fort Worth, TX 76102
abp@padfieldstout.com

*Counsel for Intervenors-Appellants* XL *Funding, LLC d/b/a Axle Funding, LLC, Equipment Leasing and Finance Corporation*

/s/ Sarah J. Auchterlonie
Sarah J. Auchterlonie
BROWNSTEIN HYATT FARBER SCHRECK, LLP
675 15th Street, Suite 2900
Denver, CO 80202
sja@bhfs.com

*Counsel for Intervenors-Appellants Rally Credit Union, Credit Union National Association and Cornerstone Credit Union League*

2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 339-8400
rloeb@orrick.com

Nicholas González
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071

John C. Sullivan
S|L LAW PLLC
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104

James J. Butera
Ryan Israel
MEEKS, BUTERA & ISRAEL PLLC
2020 Pennsylvania Ave., NW
Washington, DC 20006

*Counsel for Plaintiffs-Appellants Texas Bankers Association, Rio Bank, and American Bankers Association*

Thomas Pinder
Andrew Doersam
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Ave., NW
Washington, DC 20036

*Counsel for Plaintiffs-Appellants American Bankers Association*

/s/ Elbert Lin
Elbert Lin
HUNTON ANDREWS KURTH, L.L.P.
Riverfront Plaza, East Tower

11

951 East Byrd Street
Richmond, VA 23219
elin@hunton.com

Erica N. Peterson
HUNTON ANDREWS KURTH, L.L.P.
2200 Pennsylvania Avenue, NW
Washington, DC 20037

James Winford Bowen
HUNTON ANDREWS KURTH, L.L.P.
Suite 3700
1445 Ross Avenue
Fountain Place
Dallas, TX 75202

*Counsel for Plaintiffs-Appellants Texas First Bank, Independent Bankers Association of Texas, Independent Community Bankers of America*

November 19, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this motion contains 1,833 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on November 19, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Orrick, Herrington & Sutcliffe LLP

*/s/ Robert M. Loeb*
Robert M. Loeb
*Counsel for Plaintiffs-Appellants Texas Bankers Association, Rio Bank, and American Bankers Association*
