No. 24-40705

IN THE

# United States Court of Appeals for the Fifth Circuit

Texas Bankers Association; Rio Bank, McAllen, Texas; American Bankers Association; Texas First Bank; Independent Bankers Association of Texas; Independent Community Bankers of America,
Plaintiffs-Appellants,

v.

Consumer Financial Protection Bureau; Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau,
Defendants-Appellees,

v.

Texas Farm Credit; Farm Credit Council; Capital Farm Credit,
Intervenor Plaintiffs-Appellants,

-------------------------------------------------

XL Funding, L.L.C.; Equipment Leasing and Finance Association; Rally Credit Union; Credit Union National Association; Cornerstone Credit Union League,
Intervenors-Appellants.

On Appeal from the United States District Court for the Southern District of Texas, No. 7:23-cv-144
Hon. Randy Crane

## RECORD EXCERPTS OF PLAINTIFFS-APPELLANTS

John C. Sullivan
S|L LAW PLLC
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
(469) 523-1351

Robert M. Loeb
John Coleman
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 339-8400

*Counsel for Plaintiffs-Appellants Texas Bankers Association, Rio Bank, and American Bankers Association*

# ADDITIONAL COUNSEL

Joseph J. Reilly
TROUTMAN PEPPER HAMILTON
  SANDERS LLP
401 9th St NW
Suite 1000
Washington, DC 20004
joseph.reilly@troutman.com

*Counsel for Intervenors-
Plaintiffs Texas Farm Credit,
Farm Credit Council, and
Capital Farm Credit*

Alan Bartlett Padfield
Kelsey Nicole Linendoll
Owen Colin Babcock
PADFIELD & STOUT, LLP
100 Throckmorton Street
Suite 700
Fort Worth, TX 76102
abp@padfieldstout.com

*Counsel for Intervenors-
Appellants* XL *Funding, LLC
d/b/a Axle Funding, LLC,
Equipment Leasing, and
Finance Corporation*

Sarah J. Auchterlonie
BROWNSTEIN HYATT FARBER
SCHRECK, LLP
675 15th Street
Suite 2900
Denver, CO 80202
sja@bhfs.com

Nicholas González
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90071

James J. Butera
Ryan Israel
MEEKS, BUTERA & ISRAEL PLLC
2020 Pennsylvania Ave., NW
Washington, DC 20006

*Counsel for Plaintiffs-Appellants
Texas Bankers Association, Rio
Bank, and American Bankers
Association*

Thomas Pinder
Andrew Doersam
AMERICAN BANKERS ASSOCIATION
1333 New Hampshire Ave., NW
Washington, DC 20036

*Counsel for Plaintiffs-Appellants
American Bankers Association*

Elbert Lin
HUNTON ANDREWS KURTH, L.L.P.
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
elin@hunton.com

James Winford Bowen
HUNTON ANDREWS KURTH, L.L.P.
Suite 3700
1445 Ross Avenue
Fountain Place
Dallas, TX 75202

*Counsel for Intervenors-Appellants Rally Credit Union, Credit Union National Association, and Cornerstone Credit Union League*

Erica N. Peterson
HUNTON ANDREWS KURTH, L.L.P.
2200 Pennsylvania Avenue, NW
Washington, DC 20037

*Counsel for Plaintiffs-Appellants Texas First Bank, Independent Bankers Association of Texas, and Independent Community Bankers of America*

## TABLE OF CONTENTS

**Tab No.**                                                   **Record Cite**

1. Docket Sheet ....................................................................... ROA.1

2. Plaintiffs'/Intervenors' Joint Notice of Appeal ..................... ROA.3472

3. Summary Judgment Order .................................................. ROA.3386

4. Final Judgment .................................................................. ROA.3465

5. Certificate of Service

# TAB 1

APPEAL,APPEAL_NAT,CLOSED,MAG

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (McAllen)
# CIVIL DOCKET FOR CASE #: 7:23-cv-00144
# Internal Use Only

| | |
|---|---|
| Texas Bankers Association et al v. Consumer Financial Protection Bureau et al | Date Filed: 04/26/2023 |
| Assigned to: Chief Judge Randy Crane | Date Terminated: 09/23/2024 |
| Cause: 05:702 Administrative Procedure Act | Jury Demand: None |
| | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**Texas Bankers Association**          represented by     **James J Butera**
Meeks, Butera & Israel PLLC
2020 Pennsylvania Ave., NW
Washington, DC 20006
(202) 285-3382
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan David Israel**
Meeks, Butera & Israel PLLC
2020 Pennsylvania Ave NW #478
Washington, DC 20006
202-257-1873
Email: risrael@meeksbi.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Clay Sullivan**
SL Law PLLC
610 Uptown Boulevard
Suite 2000
Cedar Hill, TX 75104
469-523-1351
Fax: 469-613-0891
Email: john.sullivan@the-sl-lawfirm.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rio Bank**          represented by     **James J Butera**
*McAllen, Texas*                                    (See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*

**24-40705.1**

*ATTORNEY TO BE NOTICED*

**Ryan David Israel**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Clay Sullivan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **American Bankers Association** | represented by | **Andrew Doersam**<br>1333 New Hampshire Ave NW<br>Washington, DC 20036<br>202-663-5035<br>Email: adoersam@aba.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Thomas Pinder**<br>1333 New Hampshire Ave NW<br>Washington, DC 20036<br>202-663-5028<br>Email: tpinder@aba.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **John Clay Sullivan**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Plaintiff**

| | | |
|---|---|---|
| **Texas First Bank** | represented by | **James W Bowen**<br>Hunton Andrews Kurth LLP<br>1445 Ross Ave<br>Ste 3700<br>Dallas, TX 75202<br>214-468-3309<br>Fax: 214-880-0011<br>Email: jbowen@huntonak.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Elbert Lin**<br>Hunton Andrews Kurth LLP<br>951 E. Byrd Street<br>Riverfront Plaza, East Tower<br>Richmond, VA 23219-4074<br>804-788-7207<br>Fax: 804-788-8218 |

Email: elin@hunton.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erica Nicole Peterson**
Hunton Andrews Kurth LLP
2200 Pennsylvania Ave, NW
Washington, DC 20037
202-955-1932
Email: epeterson@hunton.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Lauren Clyde**
Hunton Andrews Kurth LLP
1445 Ross Ave.
Ste. 3700
Dallas, TX 75202
214-979-3000
Email: jclyde@huntonak.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Independent Bankers Association of Texas**                    represented by    **James W Bowen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elbert Lin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erica Nicole Peterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Lauren Clyde**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Independent Community Bankers of America**                    represented by    **James W Bowen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elbert Lin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Erica Nicole Peterson**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer Lauren Clyde**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Consumer Financial Protection Bureau**          represented by   **Kevin E. Friedl**
Consumer Financial Protection Bureau
1700 G St NW
Washington, DC 20522
202-435-9268
Email: kevin.friedl@cfpb.gov
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrea Matthews**
Consumer Financial Protection Bureau
1700 G Street Northwest
Washington, DC 20552
202-435-7591
Email: andrea.matthews@cfpb.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen S Bloom**
Consumer Financial Protection Bureau
1700 G St., N.W.
Washington, DC 20552
202-435-7012
Email: karen.bloom@cfpb.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rohit Chopra**          represented by   **Kevin E. Friedl**
*in his official capacity as Director of the*          (See above for address)
*CFPB*          *LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrea Matthews**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Karen S Bloom**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

**Texas Farm Credit**                    represented by    **Joseph J Reilly**
Troutman Pepper Hamilton Sanders LLP
401 9th St NW
Ste 1000
Washington, DC 20004
202-274-2908
Email: joseph.reilly@troutman.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misha Tseytlin**
Troutman Pepper Hamilton Sanders LLP
227 W. Monroe St
Ste 3900
Chicago, IL 60606
312-759-5947
Email: misha.tseytlin@troutman.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Gordon Gurwitz**
Atlas Hall Rodriguez LLP
818 Pecan
McAllen, TX 78502
956-682-5501
Email: dgurwitz@atlashall.com
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

**Farm Credit Council**                  represented by    **Joseph J Reilly**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misha Tseytlin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Gordon Gurwitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Intervenor Plaintiff**

**Capital Farm Credit**                  represented by

**Joseph J Reilly**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Misha Tseytlin**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Gordon Gurwitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**Rally Credit Union**                    represented by     **Christopher Owen Murray**
First & Fourteenth PLLC
2 N. Cascade Avenue
Suite 1430
Colorado Springs, CO 80903
719-428-2492
Email: chris@first-fourteenth.com
*TERMINATED: 03/20/2024*

**Julian R. Ellis , Jr**
First & Fourteenth PLLC
Brownstein Hyatt Farber Schreck, LLP
2 N. Cascade Avenue
Suite 1430
Colorado Springs, CO 80903
719-286-2475
Email: julian@first-fourteenth.com
*TERMINATED: 03/20/2024*

**Julian R. Ellis, Jr**
Brownstein Hyatt Harber Schreck, LLP
675 15th St
Ste 2900
Denver, CO 80202
303-223-1142
Email: jellis@bhfs.com
*TERMINATED: 03/20/2024*
*PRO HAC VICE*

**Sarah Johnson Auchterlonie**
Brownstein Hyatt Farber Schreck, LLP
675 15th St.
Suite 2900
Denver, CO 80202
303-223-1228
Email: sja@bhfs.com
*ATTORNEY TO BE NOTICED*

**Movant**

**Credit Union National Association**  represented by  **Christopher Owen Murray**
(See above for address)
*TERMINATED: 03/20/2024*

**Julian R. Ellis , Jr**
(See above for address)
*TERMINATED: 03/20/2024*

**Julian R. Ellis, Jr**
(See above for address)
*TERMINATED: 03/20/2024*
*PRO HAC VICE*

**Sarah Johnson Auchterlonie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Movant**

**Cornerstone Credit Union League**  represented by  **Christopher Owen Murray**
(See above for address)
*TERMINATED: 03/20/2024*

**Julian R. Ellis , Jr**
(See above for address)
*TERMINATED: 03/20/2024*

**Julian R. Ellis, Jr**
(See above for address)
*TERMINATED: 03/20/2024*
*PRO HAC VICE*

**Sarah Johnson Auchterlonie**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Amicus**

**Fresno Community Development**  represented by  **Alessandra Baniel Markano-Stark**
**Finanancial Institution d/b/a Access Plus**  Relman Colfax PLLC
**Capital**  1225 19th Street NW
Suite 600
Washington, DC 20036
202-728-1888
Email: amarkano-stark@relmanlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Hayes**

Relman Colfax PLLC
1225 19th St NW
Suite 600
Washington, DC 20036
202-728-1888
Email: shayes@relmanlaw.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Responsible Business Lending Coalition**    represented by    **Alessandra Baniel Markano-Stark**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Hayes**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Texas Association of Community Development Corporations**    represented by    **Stephen Hayes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Allies for Community Business**    represented by    **Stephen Hayes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Community First Fund**    represented by    **Stephen Hayes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Great Rivers Community Trust, d/b/a Scale Link**    represented by    **Stephen Hayes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Opportunity Finance Network**    represented by    **Stephen Hayes**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

**XL FUNDING, LLC d/b/a Axle Funding, LLC**

represented by **Alan Bartlett Padfield**
Padfield & Stout, LLP
100 Throckmorton Street, Suite 700
Fort Worth, TX 76102
817-338-1616
Fax: 817-338-1610
Email: abp@livepad.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelsey Nicole Linendoll , I**
Padfield & Stout, LLP
100 Throckmorton Street
Ste. 700
Fort Worth, TX 76102
817-338-1616
Fax: 817-338-1610
Email: klinendoll@padfieldstout.com
*ATTORNEY TO BE NOTICED*

**Owen Colin Babcock**
Padfield & Stout, LLP
100 Throckmorton Street
Suite 700
Fort Worth, TX 76102
817-338-1616
Fax: 817-338-1610
Email: obabcock@padfieldstout.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

**Equipment Leasing and Finance Association**

represented by **Alan Bartlett Padfield**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelsey Nicole Linendoll , I**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Owen Colin Babcock**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/26/2023 | 1 (p.26) | COMPLAINT against All Defendants (Filing fee $ 402 receipt number ATXSDC-29814177) filed by Rio Bank McAllen, TX, Texas Bankers Association. (Attachments: # 1 (p.26) Exhibit A - Embrey Declaration, # 2 (p.59) Exhibit B - Sasser Declaration with Exhibit 1)(Sullivan, John) (Entered: 04/26/2023) |
| 04/26/2023 | 2 (p.59) | Civil Cover Sheet by Rio Bank McAllen, TX, Texas Bankers Association, filed.(Sullivan, John) (Entered: 04/26/2023) |
| 04/26/2023 | | (Court only) Set Magistrate Judge Flag: Nadia S. Medrano. (klopez, 7) (Entered: 04/26/2023) |
| 04/26/2023 | 3 (p.61) | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 7/5/2023 at 09:30 AM before Chief Judge Randy Crane (by Chief Judge Randy Crane) Parties notified.(klopez, 7) (Entered: 04/26/2023) |
| 04/28/2023 | 4 (p.65) | Request for Issuance of Summons as to All Defendants, Attorney General of the United States, US Attorney for the Southern District of Texas, filed. (Attachments: # 1 (p.26) Continuation Summons, # 2 (p.59) Continuation Summons, # 3 (p.61) Continuation Summons, # 4 (p.65) Continuation Summons, # 5 (p.77) Continuation Summons)(Sullivan, John) (Entered: 04/28/2023) |
| 04/28/2023 | 5 (p.77) | Summons Issued as to All Defendants. Issued summons delivered to plaintiff by NEF, Summons Issued as to All Defendants, U.S. Attorney and U.S. Attorney General. Issued summons returned to plaintiff by NEF, filed.(klopez, 7) (Entered: 04/28/2023) |
| 05/03/2023 | 6 (p.89) | MOTION for Kevin E. Friedl to Appear Pro Hac Vice by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 5/24/2023. (Friedl, Kevin) (Entered: 05/03/2023) |
| 05/04/2023 | 7 (p.90) | MOTION for James J. Butera to Appear Pro Hac Vice by Rio Bank, Texas Bankers Association, filed. Motion Docket Date 5/25/2023. (Sullivan, John) (Entered: 05/04/2023) |
| 05/04/2023 | 8 (p.91) | MOTION for Ryan Israel to Appear Pro Hac Vice by Rio Bank, Texas Bankers Association, filed. Motion Docket Date 5/25/2023. (Sullivan, John) (Entered: 05/04/2023) |
| 05/10/2023 | 9 (p.92) | ORDER granting 6 (p.89) Motion for Kevin E. Friedl to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 05/10/2023) |

| | | |
|---|---|---|
| 05/10/2023 | 10 (p.93) | ORDER granting 7 (p.90) Motion for James J. Butera to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(KarenLLopez, 7) (Entered: 05/10/2023) |
| 05/10/2023 | 11 (p.94) | ORDER granting 8 (p.91) Motion for Ryan Israel to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(KarenLLopez, 7) (Entered: 05/10/2023) |
| 05/14/2023 | 12 (p.95) | First AMENDED COMPLAINT against All Defendants filed by Rio Bank, Texas Bankers Association, American Bankers Association. (Attachments: # 1 (p.26) Exhibit A - Embrey Declaration, # 2 (p.59) Exhibit B - Sasser Declaration with Exhibit 1, # 3 (p.61) Exhibit C - O'Neill Declaration)(Sullivan, John) (Entered: 05/14/2023) |
| 05/26/2023 | 13 (p.134) | Opposed MOTION for Preliminary Injunction by American Bankers Association, Rio Bank, Texas Bankers Association, filed. Motion Docket Date 6/16/2023. (Attachments: # 1 (p.26) Continuation Memorandum in Support, # 2 (p.59) Proposed Order Proposed Order)(Sullivan, John) (Entered: 05/26/2023) |
| 06/09/2023 | 14 (p.152) | Joint MOTION for Continuance of Initial Scheduling Conference and Deadline to File Answer by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 6/30/2023. (Attachments: # 1 (p.26) Proposed Order)(Friedl, Kevin) (Entered: 06/09/2023) |
| 06/14/2023 | 15 (p.157) | AMENDED ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. ( Initial Conferencere set for 8/8/2023 at 09:30 AM before Chief Judge Randy Crane). (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 06/14/2023) |
| 06/16/2023 | 16 (p.161) | RESPONSE in Opposition to 13 (p.134) Opposed MOTION for Preliminary Injunction, filed by Rohit Chopra, Consumer Financial Protection Bureau. (Attachments: # 1 (p.26) Proposed Order)(Friedl, Kevin) (Entered: 06/16/2023) |
| 06/23/2023 | 17 (p.190) | REPLY in Support of 13 (p.134) Opposed MOTION for Preliminary Injunction, filed by American Bankers Association, Rio Bank, Texas Bankers Association. (Sullivan, John) (Entered: 06/23/2023) |
| 06/30/2023 | 18 (p.210) | NOTICE *by Parties Regarding Potential Hearing* by American Bankers Association, Rio Bank, Texas Bankers Association, filed. (Sullivan, John) (Entered: 06/30/2023) |
| 07/03/2023 | 19 (p.212) | ANSWER to 12 (p.95) Amended Complaint/Counterclaim/Crossclaim etc., by Rohit Chopra, |

| | | |
|---|---|---|
| | | Consumer Financial Protection Bureau, filed.(Friedl, Kevin) (Entered: 07/03/2023) |
| 07/06/2023 | 20 (p.232) | ORDER SETTING HEARING ON 13 (p.134) PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION (Preliminary Injunction Hearing set for 7/27/2023 before Chief Judge Randy Crane). (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 07/06/2023) |
| 07/06/2023 | 21 (p.233) | ORDER GRANTING JOINT MOTION TO CONTINUE DEFENDANTS DEADLINE TO RESPOND TO AMENDED COMPLAINT. (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 07/06/2023) |
| 07/17/2023 | 22 (p.234) | NOTICE OF RESCHEDULING OF INITIAL PRETRIAL CONFERENCE. Initial Conference reset for 8/17/2023 at 09:00 AM before Chief Judge Randy Crane. (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 07/17/2023) |
| 07/25/2023 | 23 (p.235) | NOTICE of Supplemental Declarations re: 13 (p.134) Opposed MOTION for Preliminary Injunction by American Bankers Association, Rio Bank, Texas Bankers Association, filed. (Attachments: # 1 (p.26) Exhibit 1 (Supplemental Declaration of Virginia O'Neill), # 2 (p.59) Exhibit 2 (Supplemental Declaration of Ford Sasser))(Sullivan, John) (Entered: 07/25/2023) |
| 07/27/2023 | 24 (p.253) | ORDER SETTING VIDEO STATUS CONFERENCE Video Status Conference set for 1/19/2024 at 09:30 AM before Chief Judge Randy Crane(Signed by Chief Judge Randy Crane) Parties notified.(SandraSilva, 7) (Entered: 07/27/2023) |
| 07/27/2023 | | Minute Entry for proceedings held before Chief Judge Randy Crane. MOTION HEARING held on 7/27/2023. Case called on docket. The Court announced briefing is complete and intends to grant the request for an injunction. After discussion, the Court GRANTED the relief requested limited to all the parties before the Court and members and will remain in effect until decision is received from the Supreme Court. Order by the Court, forthcoming. Appearances: John Clay Sullivan/James J. Butera, Plaintiff; Kevin E. Friedl, Defendant. (ERO:Ricardo Rodriguez), filed.(DeliaRodriguez, 7) (Entered: 07/27/2023) |
| 07/31/2023 | 25 (p.254) | ORDER GRANTING 13 (p.134) IN-PART AND DENYING IN-PART PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION. (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 07/31/2023) |
| 08/04/2023 | 26 (p.271) | |

| | | |
|---|---|---|
| | | Unopposed MOTION for Leave to File Intervene by Texas First Bank, Independent Bankers Association of Texas, Independent Community Bankers of America, filed. Motion Docket Date 8/25/2023. (Attachments: # 1 (p.26) Exhibit 1, # 2 (p.59) Proposed Order)(Bowen, James) (Entered: 08/04/2023) |
| 08/04/2023 | 27 (p.309) | MOTION to Appear Pro Hac Vice for Elbert Lin (Fee Paid: $100, receipt number ATXSDC-30312057) by Independent Bankers Association of Texas, Independent Community Bankers of America, Texas First Bank, filed. Motion Docket Date 8/25/2023. (Bowen, James) (Entered: 08/04/2023) |
| 08/04/2023 | 28 (p.310) | MOTION to Appear Pro Hac Vice for Erica Peterson (Fee Paid: $100, receipt number ATXSDC-30312077) by Independent Bankers Association of Texas, Independent Community Bankers of America, Texas First Bank, filed. Motion Docket Date 8/25/2023. (Bowen, James) (Entered: 08/04/2023) |
| 08/10/2023 | | (Court only) ***Attorney Erica Peterson,Elbert Lin for Independent Bankers Association of Texas,Erica Peterson,Elbert Lin for Independent Community Bankers of America,Erica Peterson,Elbert Lin for Texas First Bank added. (KarenLLopez, 7) (Entered: 08/10/2023) |
| 08/10/2023 | 29 (p.311) | ORDER granting 27 (p.309) Motion for Elbert Lin to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(KarenLLopez, 7) (Entered: 08/10/2023) |
| 08/10/2023 | 30 (p.312) | ORDER granting 28 (p.310) Motion for Erica Peterson to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(KarenLLopez, 7) (Entered: 08/10/2023) |
| 08/10/2023 | 31 (p.313) | ORDER VACATING ORDER SETTING INITITAL PRETRIAL CONFERENCE. Deadlines terminated. (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/10/2023) |
| 08/10/2023 | 32 (p.314) | Unopposed MOTION to Intervene by Rally Credit Union, Credit Union National Association, Cornerstone Credit Union League, filed. Motion Docket Date 8/31/2023. (Attachments: # 1 (p.26) Exhibit 1, # 2 (p.59) Proposed Order)(Murray, Christopher) (Entered: 08/10/2023) |
| 08/10/2023 | 33 (p.343) | MOTION to Appear Pro Hac Vice for Julian R. Ellis, Jr. (Fee Paid: $100, receipt number ATXSDC-30340078) by Cornerstone Credit Union League, Credit Union National Association, Rally Credit Union, filed. Motion Docket Date 8/31/2023. (Ellis, Julian) (Entered: 08/10/2023) |

| 08/14/2023 | 34 (p.345) | ORDER GRANTING 32 (p.314) UNOPPOSED EMERGENCY MOTIONFOR LEAVE TO INTERVENE AND BRIEF IN SUPPORT.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/14/2023) |
|---|---|---|
| 08/14/2023 | | (Court only) ***Attorney Julian R. Ellis, Jr for Cornerstone Credit Union League,Julian R. Ellis, Jr for Credit Union National Association,Julian R. Ellis, Jr for Rally Credit Union added. (JenniferNogueira, 7) (Entered: 08/14/2023) |
| 08/14/2023 | 35 (p.346) | ORDER granting 33 (p.343) Motion for Julian R. Ellis, Jr. to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/14/2023) |
| 08/14/2023 | 36 (p.347) | MOTION to Appear Pro Hac Vice for Thomas Pinder (Fee Paid: $100, receipt number ATXSDC-30354297) by American Bankers Association, filed. Motion Docket Date 9/5/2023. (Sullivan, John) (Entered: 08/14/2023) |
| 08/14/2023 | 37 (p.348) | MOTION to Appear Pro Hac Vice for Andrew Doersam (Fee Paid: $100, receipt number ATXSDC-30354353) by American Bankers Association, filed. Motion Docket Date 9/5/2023. (Sullivan, John) (Entered: 08/14/2023) |
| 08/15/2023 | 38 (p.349) | ORDER granting 26 (p.271) Motion for Leave to File.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/15/2023) |
| 08/15/2023 | 39 (p.350) | INTERVENOR COMPLAINT against Rohit Chopra, Consumer Financial Protection Bureau filed by Independent Bankers Association of Texas, Texas First Bank, Independent Community Bankers of America.(Bowen, James) (Entered: 08/15/2023) |
| 08/15/2023 | 40 (p.368) | NOTICE of Appearance by Jennifer L. Clyde on behalf of Independent Bankers Association of Texas, Independent Community Bankers of America, Texas First Bank, filed. (Clyde, Jennifer) (Entered: 08/15/2023) |
| 08/15/2023 | 41 (p.370) | INTERVENOR COMPLAINT against Rohit Chopra, Consumer Financial Protection Bureau filed by Credit Union National Association, Cornerstone Credit Union League, Rally Credit Union.(Murray, Christopher) (Entered: 08/15/2023) |
| 08/15/2023 | | (Court only) ***Attorney Andrew Doersam for American Bankers Association added. (JenniferNogueira, 7) (Entered: 08/15/2023) |
| 08/15/2023 | 42 (p.381) | ORDER granting 37 (p.348) Motion for Andrew Doersam to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER** |

| | | |
|---|---|---|
| | | are found here.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/15/2023) |
| 08/15/2023 | | (Court only) ***Attorney Thomas Pinder for American Bankers Association added. (JenniferNogueira, 7) (Entered: 08/15/2023) |
| 08/15/2023 | 43 (p.382) | ORDER granting 36 (p.347) Motion for Thomas Pinder to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/15/2023) |
| 08/15/2023 | 44 (p.383) | MOTION for Preliminary Injunction by Independent Bankers Association of Texas, Independent Community Bankers of America, Texas First Bank, filed. Motion Docket Date 9/5/2023. (Attachments: # 1 (p.26) EX 1 - Balcer Declaration, # 2 (p.59) EX 2 - Tsai Declaration, # 3 (p.61) EX 3 - Williston Declaration, # 4 (p.65) Proposed Order)(Bowen, James) (Entered: 08/15/2023) |
| 08/16/2023 | 45 (p.468) | JOINDER in 44 (p.383) MOTION for Preliminary Injunction , filed by Cornerstone Credit Union League, Credit Union National Association, Rally Credit Union. (Attachments: # 1 (p.26) Exhibit A, # 2 (p.59) Exhibit B, # 3 (p.61) Exhibit C)(Murray, Christopher) (Entered: 08/16/2023) |
| 08/22/2023 | 46 (p.505) | RESPONSE in Opposition to 44 (p.383) MOTION for Preliminary Injunction, filed by Rohit Chopra, Consumer Financial Protection Bureau. (Attachments: # 1 (p.26) Proposed Order)(Friedl, Kevin) (Entered: 08/22/2023) |
| 08/28/2023 | 47 (p.514) | REPLY in Support of 44 (p.383) MOTION for Preliminary Injunction, filed by Independent Bankers Association of Texas, Independent Community Bankers of America, Texas First Bank. (Bowen, James) (Entered: 08/28/2023) |
| 08/28/2023 | 48 (p.522) | REPLY to 45 (p.468) Joinder *in Support of 44 (p.383) MOTION for Preliminary Injuction*, filed by Cornerstone Credit Union League, Credit Union National Association, Rally Credit Union. (Murray, Christopher) (Entered: 08/28/2023) |
| 08/28/2023 | 49 (p.527) | Unopposed MOTION for Leave to File Intervene by XL FUNDING, LLC d/b/a Axle Funding, LLC, Equipment Leasing and Finance Association, filed. Motion Docket Date 9/18/2023. (Attachments: # 1 (p.26) Exhibit Exhibit 1, # 2 (p.59) Proposed Order Order)(Padfield, Alan) (Entered: 08/28/2023) |
| 08/29/2023 | 50 (p.570) | ORDER granting 49 (p.527) Motion for Leave to File.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 08/29/2023) |

| 08/29/2023 | 51 (p.571) | INTERVENOR COMPLAINT against All Defendants filed by Equipment Leasing and Finance Association, XL FUNDING, LLC d/b/a Axle Funding, LLC.(Padfield, Alan) (Entered: 08/29/2023) |
|---|---|---|
| 08/30/2023 | 52 (p.593) | NOTICE of Appearance by Owen C. Babcock on behalf of Equipment Leasing and Finance Association, XL FUNDING, LLC d/b/a Axle Funding, LLC, filed. (Babcock, Owen) (Entered: 08/30/2023) |
| 08/30/2023 | 53 (p.596) | NOTICE of Appearance by Kelsey N. Linendoll on behalf of Equipment Leasing and Finance Association, XL FUNDING, LLC d/b/a Axle Funding, LLC, filed. (Linendoll, Kelsey) (Entered: 08/30/2023) |
| 08/31/2023 | 54 (p.599) | EMERGENCY MOTION( Motion Docket Date 9/21/2023.), MOTION for Preliminary Injunction by Equipment Leasing and Finance Association, XL FUNDING, LLC d/b/a Axle Funding, LLC, filed. (Attachments: # 1 (p.26) Exhibit "A", # 2 (p.59) Exhibit "B", # 3 (p.61) Proposed Order)(Padfield, Alan) (Entered: 08/31/2023) |
| 09/08/2023 | 55 (p.640) | Unopposed *Emergency Motion for Leave INTERVENOR COMPLAINT against All Defendants filed by Texas Farm Credit, Farm Credit Council, Capital Farm Credit. (Attachments: # 1 (p.26) Exhibit proposed Complaint, # 2 (p.59) Exhibit proposed Preliminary Injunction Motion, # 3 (p.61) Exhibit, # 4 (p.65) Exhibit, # 5 (p.77) Exhibit, # 6 (p.89) Proposed Order)(Gurwitz, Daniel) *Modified on 9/11/2023 (KarenLLopez, 7). (Entered: 09/08/2023) |
| 09/12/2023 | 56 (p.768) | MOTION to Appear Pro Hac Vice for Misha Tseytlin (Fee Paid: $100, receipt number ATXSDC-30502239) by Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. Motion Docket Date 10/3/2023. (Gurwitz, Daniel) (Entered: 09/12/2023) |
| 09/12/2023 | 57 (p.769) | MOTION to Appear Pro Hac Vice for Joseph J. Reilly (Fee Paid: $100, receipt number ATXSDC-30502343) by Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. Motion Docket Date 10/3/2023. (Gurwitz, Daniel) (Entered: 09/12/2023) |
| 09/14/2023 | | (Court only) ***Attorney Misha Tseytlin for Capital Farm Credit,Misha Tseytlin for Farm Credit Council,Misha Tseytlin for Texas Farm Credit added. (JenniferNogueira, 7) (Entered: 09/14/2023) |
| 09/14/2023 | 58 (p.770) | ORDER granting 56 (p.768) Motion for Misha Tseytlin to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 09/14/2023) |
| 09/14/2023 | | |

| | | |
|---|---|---|
| | | (Court only) ***Attorney Joseph J Reilly for Capital Farm Credit,Joseph J Reilly for Farm Credit Council,Joseph J Reilly for Texas Farm Credit added. (JenniferNogueira, 7) (Entered: 09/14/2023) |
| 09/14/2023 | 59 (p.771) | ORDER granting 57 (p.769) Motion for Joseph J. Reilly to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 09/14/2023) |
| 09/21/2023 | 60 (p.772) | RESPONSE in Opposition to 54 (p.599) EMERGENCY MOTION MOTION for Preliminary Injunction, filed by Rohit Chopra, Consumer Financial Protection Bureau. (Attachments: # 1 (p.26) Proposed Order)(Friedl, Kevin) (Entered: 09/21/2023) |
| 09/27/2023 | 61 (p.780) | REPLY in Support of 54 (p.599) EMERGENCY MOTION MOTION for Preliminary Injunction, filed by Equipment Leasing and Finance Association, XL FUNDING, LLC d/b/a Axle Funding, LLC. (Padfield, Alan) (Entered: 09/27/2023) |
| 10/16/2023 | 62 (p.787) | MOTION to Appear Pro Hac Vice for Karen Bloom (Fee Exempt) by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 11/6/2023. (Bloom, Karen) (Entered: 10/16/2023) |
| 10/16/2023 | 63 (p.788) | ANSWER to 39 (p.350) Intervenor Complaint by Rohit Chopra, Consumer Financial Protection Bureau, filed.(Friedl, Kevin) (Entered: 10/16/2023) |
| 10/16/2023 | 64 (p.802) | ANSWER to 41 (p.370) Intervenor Complaint by Rohit Chopra, Consumer Financial Protection Bureau, filed.(Friedl, Kevin) (Entered: 10/16/2023) |
| 10/18/2023 | 65 (p.815) | ORDER granting 62 (p.787) MOTION to Appear Pro Hac Vice for Karen Bloom (Fee Exempt) (Signed by Chief Judge Randy Crane) Parties notified.(KarenLLopez, 7) (Entered: 10/18/2023) |
| 10/23/2023 | 66 (p.816) | ORDER granting 54 (p.599) Motion for Emergency to Leave.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 10/23/2023) |
| 10/24/2023 | 67 (p.817) | COMPLAINT against All Defendants (Filing fee $ 402 receipt number ATXSDC-30710562) filed by Farm Credit Council, Capital Farm Credit, Texas Farm Credit.(Gurwitz, Daniel) (Entered: 10/24/2023) |
| 10/24/2023 | 68 (p.831) | MOTION for Preliminary Injunction by Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. Motion Docket Date 11/14/2023. (Attachments: # 1 (p.26) Exhibit Exhibit A, # 2 (p.59) Exhibit Exhibit B, # 3 (p.61) Exhibit Exhibit C, # 4 (p.65) Exhibit Exhibit D, # 5 (p.77) Exhibit Exhibit E, # 6 (p.89) Exhibit Exhibit F, # 7 (p.90) |

| | | |
|---|---|---|
| | | Exhibit Exhibit G, # 8 (p.91) Exhibit Exhibit H, # 9 (p.92) Proposed Order)(Gurwitz, Daniel) (Entered: 10/24/2023) |
| 10/26/2023 | 69 (p.899) | ORDER GRANTING 68 (p.831) INTERVENORS MOTIONS FOR PRELIMINARY INJUNCTION.(Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 10/26/2023) |
| 10/26/2023 | | (Court only) ***Motion(s) terminated: 44 (p.383) MOTION for Preliminary Injunction. (JenniferNogueira, 7) (Entered: 10/27/2023) |
| 10/30/2023 | 70 (p.907) | ANSWER to 51 (p.571) Intervenor Complaint by Rohit Chopra, Consumer Financial Protection Bureau, filed.(Bloom, Karen) (Entered: 10/30/2023) |
| 12/22/2023 | 71 (p.925) | ANSWER to 67 (p.817) Complaint by Consumer Financial Protection Bureau, filed.(Bloom, Karen) (Entered: 12/22/2023) |
| 01/18/2024 | 72 (p.936) | Joint MOTION Entry of Scheduling Order by Texas Bankers Association, filed. Motion Docket Date 2/8/2024. (Attachments: # 1 (p.26) Proposed Order)(Sullivan, John) (Entered: 01/18/2024) |
| 01/19/2024 | | Minute Entry for proceedings held before Chief Judge Randy Crane. STATUS CONFERENCE held on 1/19/2024. Case called on docket. The Court will issued a scheduling order as jointly requested by partes. Thereafter, the Court announced hearing will be rescheduled for six months to allow time for Court to complete briefing. Appearances: John Clay Sullivan/Ryan David Israel/ James W. Bowen, Plaintiff; Daniel Gordon Gurwitz/Karen S. Bloom/ Kevin E. Friedl/Owen Colin Babcock, Defendants. (ERO:Ricardo Rodriguez), filed.(DeliaRodriguez, 7) (Entered: 01/19/2024) |
| 01/22/2024 | 73 (p.940) | ORDER. Plaintiff's Motion for Summary Judgment due by 2/16/2024. Defendant's Cross-Motion for Summary Judgment and Response due by 3/15/2024. Plaintiff's Repy due by 4/12/2024. Defendant's Repy due by 5/10/2024. Status Conference set for 6/27/2024 at 09:30 AM before Chief Judge Randy Crane. (Signed by Chief Judge Randy Crane) Parties notified.(JenniferNogueira, 7) (Entered: 01/23/2024) |
| 01/31/2024 | 74 (p.942) | NOTICE *of Filing of Certified List of Contents of Administrative Record* by Rohit Chopra, Consumer Financial Protection Bureau, filed. (Attachments: # 1 (p.26) Certification of List of Contents of Administrative Record, # 2 (p.59) List of Contents of Administrative Record)(Friedl, Kevin) (Entered: 01/31/2024) |
| 02/13/2024 | 75 (p.1122) | Agreed MOTION to Modify Summary Judgment Briefing Schedule as to 73 (p.940) Order, by Texas Bankers Association, filed. Motion Docket Date 3/5/2024. |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.26) Proposed Order)(Sullivan, John) (Entered: 02/13/2024) |
| 02/13/2024 | | (Court only) *DOCKETED IN ERROR* Motion Submitted: 75 (p.1122) Agreed MOTION to Modify Summary Judgment Briefing Schedule as to 73 (p.940) Order,. (KarenLLopez, 7) Modified on 2/13/2024 (KarenLLopez, 7). (Entered: 02/13/2024) |
| 02/14/2024 | 76 (p.1126) | ORDER Granting 75 (p.1122) Agreed MOTION to Modify Summary Judgment Briefing Schedule as to 73 (p.940) Order, (Signed by Chief Judge Randy Crane) Parties notified.(KarenLLopez, 7) (Entered: 02/14/2024) |
| 02/29/2024 | 77 (p.1127) | NOTICE of Appearance by Sarah J. Auchterlonie on behalf of Cornerstone Credit Union League, Credit Union National Association, Rally Credit Union, filed. (Auchterlonie, Sarah) (Entered: 02/29/2024) |
| 02/29/2024 | 78 (p.1129) | Opposed MOTION to Supplement the Administrative Record by American Bankers Association, Capital Farm Credit, Cornerstone Credit Union League, Credit Union National Association, Equipment Leasing and Finance Association, Farm Credit Council, Independent Bankers Association of Texas, Independent Community Bankers of America, Rally Credit Union, Rio Bank, Texas Bankers Association, Texas Farm Credit, Texas First Bank, XL FUNDING, LLC d/b/a Axle Funding, LLC, filed. Motion Docket Date 3/21/2024. (Attachments: # 1 (p.26) Exhibit 1, # 2 (p.59) Supplement, # 3 (p.61) Proposed Order)(Sullivan, John) (Entered: 02/29/2024) |
| 03/01/2024 | 79 (p.1169) | MOTION for Summary Judgment by American Bankers Association, Capital Farm Credit, Cornerstone Credit Union League, Credit Union National Association, Equipment Leasing and Finance Association, Farm Credit Council, Independent Bankers Association of Texas, Independent Community Bankers of America, Rally Credit Union, Rio Bank, Texas Bankers Association, Texas Farm Credit, Texas First Bank, XL FUNDING, LLC d/b/a Axle Funding, LLC, filed. Motion Docket Date 3/22/2024. (Attachments: # 1 (p.26) Proposed Order)(Sullivan, John) (Entered: 03/01/2024) |
| 03/08/2024 | 80 (p.1213) | Unopposed MOTION for Christopher O. Murray to Withdraw as Attorney by Credit Union National Association, filed. Motion Docket Date 3/29/2024. (Murray, Christopher) (Entered: 03/08/2024) |
| 03/08/2024 | 81 (p.1216) | Unopposed MOTION for Julian R. Ellis Jr. to Withdraw as Attorney by Credit Union National Association, filed. Motion Docket Date 3/29/2024. (Murray, Christopher) (Entered: 03/08/2024) |
| 03/19/2024 | 82 (p.1219) | |

| | | |
|---|---|---|
| | | MOTION to Appear Pro Hac Vice for Andrea Matthews (Fee Exempt) by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 4/9/2024. (Matthews, Andrea) (Entered: 03/19/2024) |
| 03/19/2024 | 83 (p.1220) | MOTION to Appear Pro Hac Vice for Andrea Matthews (Fee Exempt) by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 4/9/2024. (Matthews, Andrea) (Entered: 03/19/2024) |
| 03/19/2024 | | (Court only) ***Motion terminated as moot: 82 (p.1219) MOTION to Appear Pro Hac Vice for Andrea Matthews (Fee Exempt). (KarenLLopez, 7) (Entered: 03/19/2024) |
| 03/20/2024 | 84 (p.1221) | ORDER GRANTING 80 (p.1213) and 81 (p.1216) UNOPPOSED MOTIONS FOR LEAVE TO WITHDRAW AS CO-COUNSEL FOR CREDIT UNION INTERVENORS. Attorney Christopher Owen Murray and Julian R. Ellis, Jr terminated. (Signed by Chief Judge Randy Crane) Parties notified. (JenniferNogueira, 7) (Entered: 03/20/2024) |
| 03/21/2024 | 85 (p.1222) | RESPONSE in Opposition to 78 (p.1129) Opposed MOTION to Supplement the Administrative Record, filed by Rohit Chopra, Consumer Financial Protection Bureau. (Bloom, Karen) (Entered: 03/21/2024) |
| 03/25/2024 | 86 (p.1244) | ORDER granting 83 (p.1220) Motion for Andrea Matthews to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Chief Judge Randy Crane) Parties notified. (jen7) (Entered: 03/25/2024) |
| 03/28/2024 | 87 (p.1245) | REPLY in Support of 78 (p.1129) Opposed MOTION to Supplement the Administrative Record, filed by Texas Bankers Association. (Sullivan, John) (Entered: 03/28/2024) |
| 04/12/2024 | 88 (p.1261) | MOTION to Appear Pro Hac Vice for Stephen F. Hayes (Fee Paid: $100, receipt number ATXSDC-31466815) by Fresno Community Development Finanancial Institution d/b/a Access Plus Capital, Responsible Business Lending Coalition, filed. Motion Docket Date 5/3/2024. (Hayes, Stephen) (Entered: 04/12/2024) |
| 04/12/2024 | 89 (p.1262) | MOTION to Appear Pro Hac Vice for Alessandra B. Markano-Stark (Fee Paid: $100, receipt number ATXSDC-31467094) by Fresno Community Development Finanancial Institution d/b/a Access Plus Capital, Responsible Business Lending Coalition, filed. Motion Docket Date 5/3/2024. (Markano-Stark, Alessandra) (Entered: 04/12/2024) |
| 04/12/2024 | 90 (p.1263) | RESPONSE in Opposition to 79 (p.1169) MOTION for Summary Judgment , filed by Rohit Chopra, Consumer Financial Protection Bureau. (Attachments: # 1 (p.26) |

| | | Proposed Order) (Bloom, Karen) (Entered: 04/12/2024) |
|---|---|---|
| 04/12/2024 | 91 (p.1311) | Cross MOTION for Summary Judgment by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 5/3/2024. (Attachments: # 1 (p.26) Proposed Order) (Bloom, Karen) (Entered: 04/12/2024) |
| 04/16/2024 | 92 (p.1359) | ORDER granting 88 (p.1261) Motion for Stephen Hayes to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified. (jen7) (Entered: 04/16/2024) |
| 04/16/2024 | 93 (p.1360) | ORDER granting 89 (p.1262) Motion for Alessandra B. Markano-Stark to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Chief Judge Randy Crane) Parties notified. (jen7) (Entered: 04/16/2024) |
| 05/02/2024 | 94 (p.1361) | MOTION for Leave to File Amicus Brief by Fresno Community Development Finanancial Institution d/b/a Access Plus Capital, Responsible Business Lending Coalition, Texas Association of Community Development Corporations, Allies for Community Business, Community First Fund, Great Rivers Community Trust, d/b/a Scale Link, Opportunity Finance Network, filed. Motion Docket Date 5/23/2024. (Attachments: # 1 (p.26) Proposed Amicus Brief, # 2 (p.59) Proposed Order) (Hayes, Stephen) (Entered: 05/02/2024) |
| 05/10/2024 | 95 (p.1394) | REPLY in Support of 79 (p.1169) MOTION for Summary Judgment , filed by Texas Bankers Association. (Sullivan, John) (Entered: 05/10/2024) |
| 05/10/2024 | 96 (p.1432) | RESPONSE in Opposition to 91 (p.1311) Cross MOTION for Summary Judgment , filed by Texas Bankers Association. (Sullivan, John) (Entered: 05/10/2024) |
| 05/17/2024 | 97 (p.1470) | NOTICE *of Supreme Court Decision in CFPB v. CFSA* by Rohit Chopra, Consumer Financial Protection Bureau, filed. (Friedl, Kevin) (Entered: 05/17/2024) |
| 05/24/2024 | 98 (p.1473) | NOTICE *re CFPB v. CFSA and Scheduling* by Texas Bankers Association, filed. (Sullivan, John) (Entered: 05/24/2024) |
| 06/03/2024 | 99 (p.1479) | NOTICE *of Filing of Amended Certified List of Contents of Administrative Record* by Rohit Chopra, Consumer Financial Protection Bureau, filed. (Attachments: # 1 (p.26) Certification of List of Contents of Administrative Record, # 2 (p.59) List of Contents of Administrative Record) (Friedl, Kevin) (Entered: 06/03/2024) |
| 06/07/2024 | 100 (p.1663) | REPLY in Support of 91 (p.1311) Cross MOTION for Summary Judgment , filed by Rohit Chopra, Consumer Financial Protection Bureau. (Bloom, Karen) (Entered: |

| | | |
|---|---|---|
| | | 06/07/2024) |
| 06/25/2024 | 101 (p.1694) | NOTICE *of Rulemaking to Extend Compliance Dates* by Rohit Chopra, Consumer Financial Protection Bureau, filed. (Friedl, Kevin) (Entered: 06/25/2024) |
| 06/26/2024 | 102 (p.1696) | ORDER RESETTING STATUS CONFERENCE (Status Conference reset for 7/29/2024 at 10:30 AM before Chief Judge Randy Crane), (Signed by Chief Judge Randy Crane) Parties notified. (kll7) (Entered: 06/26/2024) |
| 07/29/2024 | 103 (p.1697) | NOTICE of Appearance by Gary R. Gurwitz on behalf of Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. (Gurwitz, Daniel) (Entered: 07/29/2024) |
| 07/29/2024 | 104 (p.1699) | ORDER SETTING VIDEO STATUS CONFERENCE Status Conference set for 8/27/2024 at 10:30 AM before Chief Judge Randy Crane (Signed by Chief Judge Randy Crane) Parties notified. (kll7) (Entered: 07/29/2024) |
| 07/29/2024 | | Minute Entry for proceedings held before Chief Judge Randy Crane. STATUS CONFERENCE held on 7/29/2024.Case called on docket. Parties present. The issuance of the Court's opinion should be finalized by Friday, 8/10/2024. After discussion, the Court will reset for one month by further order to allow time for parties to file amended pleadings, arguments and responses. Appearances: John Clay Sullivan/Jennifer Cylde, Plaintiff; Gary Gurwitz/Misha Tseytlin/ Joseph J Reilly/Karen S Bloom, Defendants. (ERO:Jennier Noguiera), filed. (dsr7) (Entered: 07/29/2024) |
| 08/01/2024 | 105 (p.1700) | Joint APPENDIX by Texas Bankers Association, filed. (Attachments: # 1 (p.26) Appendix Volume I, # 2 (p.59) Appendix Volume II, # 3 (p.61) Appendix Volume III, # 4 (p.65) Appendix Volume IV, # 5 (p.77) Appendix Volume V, # 6 (p.89) Appendix Volume VI, # 7 (p.90) Appendix Volume VII, # 8 (p.91) Appendix Volume VIII, # 9 (p.92) Appendix Volume IX, # 10 (p.93) Appendix Volume X, # 11 (p.94) Appendix Volume XI, # 12 (p.95) Appendix Volume XII, # 13 (p.134) Appendix Volume XIII, # 14 (p.152) Appendix Volume XIV) (Sullivan, John) (Entered: 08/01/2024) |
| 08/02/2024 | 106 (p.3132) | NOTICE *of Errata* by Rohit Chopra, Consumer Financial Protection Bureau, filed. (Attachments: # 1 (p.26) Errata Updated Opposition to Motion to Supplement the Administrative Record (ECF 85), # 2 (p.59) Errata Updated Cross-Motion for Summary Judgment (ECF 91), # 3 (p.61) Errata Updated Opposition to Plaintiffs' Motion for Summary Judgment (ECF 90), # 4 (p.65) Errata Updated Reply in support of Defendants' Cross-Motion for Summary Judgment) (Bloom, Karen) (Entered: 08/02/2024) |

| | | |
|---|---|---|
| 08/02/2024 | 107 (p.3287) | MOTION for Judgment by Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. Motion Docket Date 8/23/2024. (Attachments: # 1 (p.26) Proposed Order) (Gurwitz, Daniel) (Entered: 08/02/2024) |
| 08/02/2024 | 108 (p.3313) | MOTION to Amend by Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. Motion Docket Date 8/23/2024. (Attachments: # 1 (p.26) Exhibit Amended Complaint, # 2 (p.59) Proposed Order) (Gurwitz, Daniel) (Entered: 08/02/2024) |
| 08/02/2024 | 109 (p.3346) | RESPONSE to 108 (p.3313) MOTION to Amend, 107 (p.3287) MOTION for Judgment filed by Texas Bankers Association. (Sullivan, John) (Entered: 08/02/2024) |
| 08/08/2024 | 110 (p.3352) | NOTICE re America's Credit Unions Notice of Non-Objection by Cornerstone Credit Union League, Credit Union National Association, Rally Credit Union, filed. (Auchterlonie, Sarah) (Entered: 08/08/2024) |
| 08/16/2024 | 111 (p.3354) | MOTION to Stay Deadline to Respond to Farm Credit Intervenors' Motion for Judgment on the Pleadings (ECF 107) by Rohit Chopra, Consumer Financial Protection Bureau, filed. Motion Docket Date 9/6/2024. (Attachments: # 1 (p.26) Proposed Order) (Bloom, Karen) (Entered: 08/16/2024) |
| 08/22/2024 | 112 (p.3364) | OBJECTIONS to 111 (p.3354) MOTION to Stay Deadline to Respond to Farm Credit Intervenors' Motion for Judgment on the Pleadings (ECF 107) , filed by Capital Farm Credit, Farm Credit Council, Texas Farm Credit. (Gurwitz, Daniel) (Entered: 08/22/2024) |
| 08/23/2024 | 113 (p.3370) | REPLY in Support of 111 (p.3354) MOTION to Stay Deadline to Respond to Farm Credit Intervenors' Motion for Judgment on the Pleadings (ECF 107), filed by Rohit Chopra, Consumer Financial Protection Bureau. (Bloom, Karen) (Entered: 08/23/2024) |
| 08/23/2024 | 114 (p.3374) | RESPONSE in Opposition to 108 (p.3313) MOTION to Amend, filed by Rohit Chopra, Consumer Financial Protection Bureau. (Bloom, Karen) (Entered: 08/23/2024) |
| 08/26/2024 | 115 (p.3386) | MEMORANDUM OPINION AND ORDER re 91 (p.1311) Cross MOTION for Summary Judgment , 78 (p.1129) Opposed MOTION to Supplement the Administrative Record, 79 (p.1169) MOTION for Summary Judgment (Signed by Chief Judge Randy Crane) Parties notified. (kll7) (Entered: 08/26/2024) |
| 08/26/2024 | 116 (p.3414) | ORDER RESETTING STATUS CONFERENCE (Status Conference reset for 9/24/2024 at 11:00 AM before Chief Judge Randy Crane), (Signed by Chief Judge Randy Crane) Parties notified. (kll7) (Entered: 08/26/2024) |
| 08/26/2024 | 117 (p.3415) | |

| | | |
|---|---|---|
| | | ORDER Granting 111 (p.3354) MOTION to Stay *Deadline to Respond to Farm Credit Intervenors' Motion for Judgment on the Pleadings (ECF 107)* (Signed by Chief Judge Randy Crane) Parties notified. (kll7) (Entered: 08/26/2024) |
| 08/29/2024 | 118 (p.3416) | REPLY in Support of 108 (p.3313) MOTION to Amend, filed by Capital Farm Credit, Farm Credit Council, Texas Farm Credit. (Attachments: # 1 (p.26) Exhibit EX. A) (Gurwitz, Daniel) (Entered: 08/29/2024) |
| 08/30/2024 | 119 (p.3450) | Opposed MOTION for Certificate of Appealability by Texas Bankers Association, filed. Motion Docket Date 9/20/2024. (Attachments: # 1 (p.26) Proposed Order) (Sullivan, John) (Entered: 08/30/2024) |
| 09/13/2024 | 120 (p.3457) | NOTICE *of Withdrawal* re: 108 (p.3313) MOTION to Amend, 107 (p.3287) MOTION for Judgment by Capital Farm Credit, Farm Credit Council, Texas Farm Credit, filed. (Attachments: # 1 (p.26) Proposed Order) (Gurwitz, Daniel) (Entered: 09/13/2024) |
| 09/16/2024 | 121 (p.3461) | ORDER re 120 (p.3457) Notice Of Withdrawal of Motions. (Signed by Chief Judge Randy Crane) Parties notified. (jen7) (Entered: 09/16/2024) |
| 09/20/2024 | 122 (p.3462) | RESPONSE to 119 (p.3450) Opposed MOTION for Certificate of Appealability , filed by Rohit Chopra, Consumer Financial Protection Bureau. (Bloom, Karen) (Entered: 09/20/2024) |
| 09/23/2024 | 123 (p.3465) | FINAL JUDGMENT. Case terminated on 9/23/2024.(Signed by Chief Judge Randy Crane) Parties notified. (jen7) (Entered: 09/23/2024) |
| 10/15/2024 | 124 (p.3466) | Opposed MOTION to Stay *Compliance Deadlines for CFPB's Final Rule Pending Appeal* by Texas Bankers Association, filed. Motion Docket Date 11/5/2024. (Attachments: # 1 (p.26) Proposed Order) (Sullivan, John) (Entered: 10/15/2024) |
| 10/23/2024 | 125 (p.3472) | NOTICE OF APPEAL to US Court of Appeals for the Fifth Circuit re: 123 (p.3465) Final Judgment by Texas Bankers Association (Filing fee $ 605, receipt number ATXSDC-32381540), filed. (Sullivan, John) (Entered: 10/23/2024) |
| 10/24/2024 | 126 (p.3476) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal is pending in the District Court: 125 (p.3472) Notice of Appeal. Fee status: Paid. Reporter(s): Ricardo Rodriguez, filed. (Attachments: # 1 (p.26) Notice of Appeal, # 2 (p.59) Docket Sheet, # 3 (p.61) Final Judgment) (jen7) (Entered: 10/24/2024) |
| 10/24/2024 | | Appeal Review Notes re: 125 (p.3472) Notice of Appeal. Fee status: Paid. Hearings were held in the case. DKT13 |

| | | transcript order form(s) due within 14 days of the filing of the notice of appeal.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed. (jen7) (Entered: 10/24/2024) |
|---|---|---|
| 10/24/2024 | | (Court only) Document(s) Sent by regular mail to John C. Sullivan re: 126 (p.3476) Clerk's Notice of Filing of an Appeal,, filed. (jen7) (Entered: 10/24/2024) |
| 10/31/2024 | 127 (p.3505) | DKT13 TRANSCRIPT ORDER REQUEST by Texas Bankers Association / John C. Sullivan. Transcript is unnecessary for appeal purposes This order form relates to the following: 125 (p.3472) Notice of Appeal, filed. (Sullivan, John) (Entered: 10/31/2024) |

# TAB 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

TEXAS BANKERS ASSOCIATION;
RIO BANK, MCALLEN, TEXAS; and
AMERICAN BANKERS ASSOCIATION

*Plaintiffs*,

v.

CONSUMER FINANCIAL PROTECTION
BUREAU; and ROHIT CHOPRA, in his official
capacity as Director of the Consumer Financial
Protection Bureau,

*Defendants*.

Case No: 7:23-cv-00144

## PLAINTIFFS'/INTERVENORS'
## JOINT NOTICE OF APPEAL

Plaintiffs Texas Bankers Association, Rio Bank, and American Bankers Association, and Intervenors Texas First Bank, Independent Bankers Association of Texas, Independent Community Bankers of America, Texas Farm Credit, Farm Credit Council, Capital Farm Credit, XL Funding, LLC, Equipment Leasing and Finance Association, Rally Credit Union, America's Credit Unions (formerly Credit Union National Association), and Cornerstone Credit Union League hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Court's September 23, 2024 Final Judgment—ECF No. 123. That final judgment incorporates the Court's previous ruling—ECF No. 115—filed on August 26, 2024, addressing the parties' cross-motions for summary judgment (ECF Nos. 79 and 91) and Plaintiffs'/Intervenors' Motion to Supplement the Administrative Record (ECF No. 78).

October 23, 2024

Respectfully submitted.

*/s/ John C. Sullivan*
John C. Sullivan
Attorney-in-Charge
Texas Bar No. 24083920
**S|L LAW PLLC**
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104
Telephone: (469) 523-1351
Facsimile: (469) 613-0891
john.sullivan@the-sl-lawfirm.com

James J. Butera*
Ryan Israel*
**MEEKS, BUTERA & ISRAEL PLLC**
2020 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 795-9714
jbutera@meeksbi.com
risrael@meeksbi.com

Thomas Pinder*
Andrew Doersam*
**AMERICAN BANKERS ASSOCIATION**
1333 New Hampshire Avenue, NW
Washington, DC 20036
tpinder@aba.com
adoersam@aba.com

*Counsel for Plaintiffs Texas Bankers
Association, Rio Bank, and American
Bankers Association*

*\* admitted pro hac vice*

24-40705.3473

/s/ James Bowen
James Bowen
Elbert Lin
Erica Nicole Peterson
Jennifer Lauren Clyde
**HUNTON ANDREWS KURTH LLP**
1445 Ross Avenue, Suite 3700
Dallas, TX 75202
Telephone: (214) 468-3309
Facsimile: (214) 880-0011
jbowen@huntonak.com

*Counsel for Intervenors Texas First Bank,
Independent Bankers Association of Texas,
and Independent Community Bankers of
America*

/s/ Misha Tseytlin
Misha Tseytlin
Joseph J. Reilly
**TROUTMAN PEPPER HAMILTON SANDERS
LLP**
401 9th Street NW, Suite 1000
Washington, DC 20004
Telephone: (202) 274-2908
joseph.reilly@troutman.com

Daniel Gordon Gurwitz
**ATLAS HALL RODRIGUEZ LLP**
818 West Pecan Boulevard
McAllen, TX 78501
Telephone: (956) 682-5501
dgurwitz@atlashall.com

*Counsel for Intervenors Texas Farm Credit,
Farm Credit Council, and Capital Farm
Credit*

/s/ Owen Colin Babcock
Alan Bartlett Padfield
Kelsey Nicole Linendoll
Owen Colin Babcock
**PADFIELD & STOUT LLP**
421 West Third Street, Suite 910
Fort Worth, TX 76102
Telephone: (817) 338-1616
Facsimile: (817) 338-1610
obabcock@padfieldstout.com

*Counsel for Intervenors XL Funding, LLC,
and Equipment Leasing and Finance
Association*

/s/ Sarah J. Auchterlonie
Sarah J. Auchterlonie
**BROWNSTEIN HYATT FARBER SCHRECK,
LLP**
675 15th Street, Suite 2900
Denver, CO 80202
Telephone: (602) 362-0034
Facsimile: (303) 223-1111
sja@bhfs.com

*Counsel for Intervenors Rally Credit Union,
America's Credit Unions (formerly Credit
Union National Association), and
Cornerstone Credit Union League*

3

24-40705.3474

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing has been filed on October 23, 2024, via the CM/ECF

system and via email courtesy copy to Counsel for Defendants.

*/s/ John C. Sullivan*
John C. Sullivan

*Counsel for Plaintiffs*

4

24-40705.3475

# TAB 3

United States District Court
Southern District of Texas
**ENTERED**
August 26, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:23-CV-144 |
| | § | |
| CONSUMER FINANCIAL PROTECTION | § | |
| BUREAU, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a case brought by various banking-related entities ("Plaintiffs") against the Consumer Financial Protection Bureau ("CFPB" or the "Bureau") and Rohit Chopra in his official capacity as Director of the CFPB (collectively, "Defendants"). Plaintiffs challenge a rule promulgated by the CFPB which introduces heightened reporting requirements for banks and other financial institutions.

Pending before the Court are Plaintiffs'/Intervenors' Motion to Supplement the Administrative Record (Dkt. No. 78), Plaintiffs'/Intervenors' Consolidated Motion for Summary Judgment (Dkt. No. 79), and Defendants' Combined Cross-Motion for Summary Judgment (Dkt. No. 91). After careful consideration of the Parties' briefing and the relevant law, the Court finds that Plaintiffs'/Intervenors' Motion to Supplement the Administrative Record (Dkt. No. 78) should be **DENIED**, Plaintiffs'/Intervenors' Consolidated Motion for Summary Judgment (Dkt. No. 79) should be **DENIED**, and Defendants' Combined Cross-Motion for Summary Judgment (Dkt. No. 91) should be **GRANTED**.

24-40705.3386

# I.    BACKGROUND

The relevant facts and procedural history of this case have been discussed at length in the Court's previous Order Granting In-Part and Denying In-Part Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 25).  The Court will nevertheless provide a synopsis of the same, including the twists and turns of the case since entry of the injunction.

## A.    STATUTORY AND REGULATORY BACKGROUND

The Equal Credit Opportunity Act of 1974 ("ECOA") protects individuals and businesses against discrimination in accessing and using credit.  *See Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 707 (5th Cir. 2017).  Decades after passage of the ECOA, Congress enacted the Dodd-Frank Wallstreet Reform and Consumer Protection Act of 2010 ("CPA").  Pub. L. No. 111–203, 124 Stat. 1376.  *Inter alia*, the CPA established two legal consequences particularly relevant to this case.

First, through the CPA, Congress created the CFPB and entrusted this new agency with various responsibilities, including prescribing ECOA's implementing regulations—a role which previously belonged to the Board of Governors of the Federal Reserve System ("the Board').  12 U.S.C. §§ 5481, 5491, 5511.  Second, "to facilitate enforcement of fair lending laws and enable communities, governmental entities, and creditors to identify business and community development needs and opportunities of women-owned, minority-owned, and small businesses," Section 1071 of the CPA amended the ECOA to create a system for collecting and reporting data on credit applications to financial institutions for women-owned, minority-owned, and small businesses.  15 U.S.C. § 1691c-2(a).  The relevant portion of the statute identifies thirteen (13) distinct data points for such businesses, examples of which include "the date on which the application was received," "the type and purpose of the loan or other credit being applied for," and "the gross annual revenue of the business in the last fiscal year of the . . . loan applicant preceding the date of the application."  *Id.* § 1691c-2(e)(2).  Particularly noteworthy in this case,

2 / 28

those thirteen data points are not exhaustive as financial institutions must also disclose "any additional data that the [CFPB] determines would aid in fulfilling the purposes of this section." *Id.* § 1691c-2(e)(2)(H).

Before the CFPB, the Board prescribed various rules pursuant to its then-role in implementing the ECOA, issuing those rules as Regulation B.  *See* 12 C.F.R. § 202.  In September 2021, the CFPB issued a proposed rule which imposed additional data points which covered financial institutions would be required to compile for small businesses.  *Small Business Lending Data Collection under the Equal Credit Opportunity Act (Regulation B)*, 86 Fed. Reg. 56356 (proposed Sept. 1, 2021); *see* A.R. 000423–000673.  And roughly a year-and-a-half later, after a notice-and-comment period, the CFPB issued a final rule in March 2023—published in the Federal Register in May 2023—which, *inter alia*, imposed those data points which the agency determined would aid in fulfilling the purposes of Section 1071 (hereinafter, the "Final Rule").[1]  12 C.F.R. § 1002.107(a) (2023).  Although the Final Rule lists 20 data points, only 9 of them are new as the remaining 11 echo those already provided in Section 1071.  *Compare id.* (requirements under the Final Rule) *with* 15 U.S.C. § 1691c-2(e)(2) (requirements under Section 1071); *see also* Dkt. No. 91 at 11 (listing the requirements imposed by the Final Rule but not by Section 1071).  Examples of the additional data points include the number of non-owners working for the applicant and the duration of time the applicant has been in business.  12 C.F.R. § 1002.107(a)(16)-(17).

## B.    PROCEDURAL HISTORY

This litigation began in April 2023, shortly after issuance of the Final Rule, when a private bank and two trade associations challenged the legality of the Final Rule on behalf of

---

[1]    This Order at times refers to the Final Rule as both a "rule" and a "regulation," as "[c]ourts and Congress treat the terms 'regulation' and 'rule' as interchangeable and synonymous."  *Nat'l Treasury Employees Union v. Weise*, 100 F.3d 157, 160 (D.C. Cir. 1996).

themselves and their members.  Dkt. No. 1.  Their operative complaint brought four claims: a claim that the Final Rule is invalid because the CFPB itself is unconstitutional, and three claims for APA violations.  *See* Dkt. No. 12 at 16–20.  In light of then-controlling Fifth Circuit precedent holding that the CFPB employed an unconstitutional funding structure, the Court in July 2023 granted in part Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 13), granting relief as to Plaintiffs and their members but declining to extend that relief nationwide.  Dkt. No. 25 at 16.  That injunction was effective "pending the Supreme Court's reversal [of the Fifth Circuit holding on the constitutionality of the CFPB's funding structure], a trial on the merits of this action, or until further order of this Court."  *Id.*  A few months later, after a flood of intervenors then joined the case and sought to share in the relief obtained by the original plaintiffs, the Court at that juncture found nationwide relief proper and extended the injunction to all covered financial institutions.  Dkt. No. 69.

A few months ago, the Supreme Court overruled the Fifth Circuit and rejected the challenge to the constitutionality of the CFPB's funding structure.  *CFPB v. Cmty. Fin. Services Ass'n of Am., Ltd.*, 601 U.S. 416, 144 S.Ct. 1474 (2024) ("*CFPB*").  The stay period prescribed by the injunction has thus ended, and the CFPB in turn has issued an interim final rule extending the compliance dates for the various tiers of institutions, with the earliest being July 18, 2025.  *See* Dkt. Nos. 98, 101.  The Parties, including the intervening plaintiffs in this case, have since fully briefed the pending cross-motions for summary judgment, as well as the related motion to supplement the administrative record, and each is ripe for resolution.  Dkt. No. 98 at 3.  In the most recent status conference, the Court received notice that three intervenor-plaintiffs—Farm Credit Council, Texas Farm Credit, and Capital Farm Credit (collectively, the "Farm Credit Intervenors")—wish to amend their pleadings to assert an additional claim in light of the Supreme Court's ruling in *CFPB*, 601 U.S. 416, 144 S.Ct. 1474, and they have since filed a

motion seeking to do so.  *See* Dkt. No. 108.  They seek to add a claim that the Final Rule is

unlawful because the Bureau lacked constitutionally appropriated funding when it published the

Final Rule.  *See* Dkt. No. 108-1.  While the Court considers whether to entertain the Farm Credit

Intervenors' additional claim (and if so, the merits of that claim), Plaintiffs indicate that they

would still like the Court in the meantime to rule on all the pre-existing, fully-briefed claims.

Dkt. No. 109 at 2.  Finding no reason for delay, the Court proceeds to do so.

## II.    APPLICABLE LAW

Generally, summary judgment is proper when there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  On cross-motions for summary judgment, the court reviews each party's motion

independently, reviewing the evidence and inferences in the light most favorable to the non-

moving party, assessing for each side whether judgment may be granted in accordance with the

Rule 56 standard.  *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

Specifically in the context of APA cases when a party seeks review of agency action,

summary judgment is an appropriate procedure but "stands in a somewhat unusual light, in that

the administrative record proves the complete factual predicate for the court's review."  *Town of*

*Abita Springs v. U.S. Army Corps of Eng'rs*, 153 F.Supp.3d 894, 903 (E.D. La. 2015) (quotation

omitted).  A district court on summary judgment "sits as an appellate tribunal, and the entire case

on review is a question of law."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C.

Cir. 2001) (cleaned up).  "In such a case, summary judgment merely serves as the mechanism for

deciding, as a matter of law, whether the agency action is supported by the administrative record

and otherwise consistent with the APA standard of review."  *Permian Basin Petroleum Ass'n v.*

*Dep't of the Interior*, 127 F.Supp.3d 700, 706 (W.D. Tex. 2015) (quoting *Oceana, Inc. v. Locke*,

831 F.Supp.2d 95, 106 (D.D.C. 2011)).

III.    **MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

Before turning to the cross-motions for summary judgment, the Court must first address the motion to supplement (Dkt. No. 78) as its resolution is necessary to ascertain the proper scope of the record for purposes of ruling on summary judgment.

The APA instructs that a court reviewing agency action "shall review the whole record or those parts of it cited by a party[.]" 5 U.S.C. § 706. It is well-established that in cases where parties seek judicial review under the APA, the scope of that review should generally be limited to the administrative record that was before the agency when it promulgated the challenged regulation. *E.g.*, *Kappos v. Hyatt*, 566 U.S. 431, 438, 132 S.Ct. 1690, 182 L.Ed.2d 704 (2012); *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010). These parameters are commonly referred to as the "record rule*." Indep. Turtle Farmers of La., Inc. v. United States*, 703 F.Supp.2d 604, 610 (W.D. La. 2010). The record rule exists because if agency action could be challenged every time "some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the administrative process could ever be consummated in an order that would not be subject to reopening." *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc*., 435 U.S. 519, 555, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). However, the record rule is not absolute, and supplementation might be warranted in limited circumstances where "the moving party demonstrates 'unusual circumstances justifying a departure' from the general presumption that review is limited to the record complied by the agency." *Medina*, 602 F.3d at 706 (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). Specifically, supplementation may be permitted when:

1) the agency deliberately or negligently excluded documents that may have been adverse to its decision,
2) the district court needed to supplement the record with "background information" in order to determine whether the agency considered all of the relevant factors, or
3) the agency failed to explain administrative action so as to frustrate judicial review.

*Id.* A district court's ruling on a motion to supplement is reviewed for abuse of discretion. *OnPath Fed. Credit Union v. U.S. Dep't of Treasury*, 73 F.4th 291, 299 (5th Cir. 2023).

Plaintiffs presently seek to add an article released by the ABA Banking Journal in February 2024 (the "ABA Article") which advocates that the Final Rule is likely to have a significant adverse impact on smaller lenders and businesses. *See* Dkt. No. 78-2. Plaintiffs argue that the ABA Article is "background material [which] highlights the CFPB's failure to consider all of the relevant factors in implementing its Final Rule and thus meets the criteria for supplementing the record." Dkt. No. 78 at 2. According to Plaintiffs, the agency relied on flawed calculations to determine the costs and effects associated with the Final Rule, and the ABA Article they seek to introduce includes more accurate data that paints a much better picture of the same, highlighting just how ill-advised the rule would be. *See id.* at 14–18.

The second *Medina* exception permits record supplementation "with 'background information' in order to determine whether the agency considered all of the relevant factors." 602 F.3d at 706. The rationale behind this exception is that whether an agency considered all of the relevant factors "can sometimes only be determined by looking outside the record to see what the agency may have ignored." *City of Dallas v. Hall*, No. 3:07-CV-00060, 2007 WL 3257188, at *5 (N.D. Tex. Oct. 29, 2007) (cleaned up). Here, the fatal flaw with Plaintiffs' argument is that the ABA Article simply is not "background information," as the term is understood—that is, to help understand what the relevant issues are. To satisfy this exception, "the documents in question must do more than raise nuanced points about a particular issue; it must point out an entirely new general subject matter that the agency failed to consider." *Oceana, Inc. v. Ross*, 454 F.Supp.3d 62, 70 (D.D.C. 2020). But here, no one doubts, and the Court finds, that the Bureau considered the expected costs and benefits of the Final Rule, and in fact did so at length. *See* A.R. 000341–000369. In offering the ABA Article, Plaintiffs seek to provide, in their own

words, a "more comprehensive picture of the costs" of the Final Rule. Dkt. No. 78 at 13. But by making the argument that the agency erroneously evaluated costs in the Final Rule—not the argument that the agency did not consider costs at all—the entirety of the ABA Article's purported utility goes to the wisdom of the rule itself. The ABA Article is, at heart, being invoked not to show that the agency "failed to consider" costs, but that the agency considered those costs poorly. Rather than provide background, the ABA Article is better considered "evidence to determine the correctness or wisdom of the agency's decision," which "is not permitted." *Harris v. United States*, 19 F.3d 1090, 1096 n.7 (5th Cir. 1994) (cleaned up); *see also Reaves v. U.S. Small Bus. Admin.*, No. 3:18-CV-01230, 2020 WL 3976984, at *4 (N.D. Tex. Jul. 14, 2020) (explaining that "evidence supporting the merits of [Plaintiff's] arguments" was not "background information" under the second *Medina* exception). The "background information" exception is therefore inapplicable.

Having established that the ABA Article does not fall under the second *Medina* exception, the Court also observes that there is otherwise no justification for its inclusion in the record. A basic tenet of judicial review is that it is to be based on the full administrative record that was before the agency at the time of its decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Accordingly, information which post-dates an agency's decision plainly cannot be a viable basis for attacking that decision. *See Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Eng'rs*, No. 3:13-CV-00126, 2015 WL 1883522, at *6 (S.D. Tex. Apr. 20, 2015) (Costa, J.). Here, the Final Rule was issued in March 2023, and the ABA Article was published nearly a year later in February 2024. Given that the ABA Article quite literally was not in existence when the Final Rule was issued, there is no basis for its inclusion in the administrative record.

In light of the foregoing, the Court rejects Plaintiffs' motion to supplement the administrative record with the ABA Article.

## IV.    ANALYSIS

Because the Supreme Court recently upheld the constitutionality of the CFPB's funding structure, *see supra* Part I.B (citing *CFPB*, 601 U.S. 416, 144 S.Ct. 1474), the Court need not consider Plaintiffs' first cause of action premised on that issue.  Accordingly, if Plaintiffs are to prevail on their summary judgment motion, it must be premised on their assertions of APA violations.  Plaintiffs present their APA challenge as three counts.  Plaintiffs first argue that the CFPB promulgated the Final Rule "in excess of [its] statutory authority and short of statutory right[.]"  Dkt. No. 12 at 17; *see* 5 U.S.C. § 706(2)(C).  Second, Plaintiffs assert that the Final Rule was arbitrary and capricious for failing to consider and respond to significant comments raised by interested parties.  Dkt. No. 12 at 18; *see* 5 U.S.C. § 706(2)(A).  And third, Plaintiffs assert that the Final Rule was also arbitrary and capricious for failing to undertake a proper cost/benefit analysis.  Dkt. No. 12 at 19; *see* 5 U.S.C. § 706(2)(A).

While these three counts are how Plaintiffs frame their challenge, the Court, after careful review of the substance of their claims and arguments, finds that there are instances where a single count asserts multiple distinct arguments and vice versa, where multiple counts assert essentially the same argument.  Therefore, as the Court will discuss, a precise undertaking as to the merits of each "count" requires carefully conceptualizing and organizing each argument made therein.

### A.    SECTION 706(2)(C): STATUTORY SCOPE

Plaintiffs' first APA challenge, presented as "Count II," is all over the place.  They allege a violation of 5 U.S.C. § 706(2)(C), which provides that agency action is unlawful if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]"  But Plaintiffs proceed to also assert, within Count II, that the Final Rule should "be set aside" as an

24-40705.3394

abuse of agency discretion," and that the Final Rule was promulgated "without any basis in the administrative record to do so."  Dkt. No. 12 at 17.  Because the latter arguments squarely constitute challenges to the reasonableness of the agency action under 5 U.S.C. § 706(2)(C), the Court will address them separately.  *See infra* Part IV.B.

The Court discerns two separate arguments asserted by Plaintiffs which actually challenge the agency's authority under 5 U.S.C. § 706(2)(C).  First, Plaintiffs seem to argue that the CPA authorizes the CFPB to promulgate additional rules which "would aid in fulfilling the purpose of the statute," and since the Final Rule is counterproductive to the purpose of the statute, the agency did not have the authority to issue it.  *See* Dkt. No. 79 at 16–25.  And second, Plaintiffs argue that the text of the CPA gave the CFPB authority to impose additional data points only if those data points constituted information already collected by lenders as part of the loan application process.  *See id.* at 25–27.

### 1. Advancing the Statute's Purpose

Section 1071 provides that its purpose "is to [(1)]facilitate enforcement of fair lending laws and [(2)] enable communities, governmental entities, and creditors to identify business and community development needs and opportunities of women-owned, minority-owned, and small businesses."  15 U.S.C. § 1691c-2(a).  Plaintiffs argue that the Final Rule is unlawful because it will not advance these purposes.  Specifically, they claim that the Final Rule is unlawful because small business loans are not standardized and cannot be reduced to the factors in the rule, *see* Dkt. No. 79 at 18–20, the potential for low response rates could render the data unreliable, *see id.* at 20–23, and the rule will purportedly result in fewer choices and higher prices for small businesses, *see id.* at 23–25.  However, this line of persuasion fundamentally misunderstands the Section 706(2)(C) inquiry, which does not consider the wisdom of a regulation's substance.

A Section 706(2)(C) challenge turns on statutory authority.  "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated [to it] by Congress."  *VanDerStok v. Garland*, 86 F.4th 179, 187 (5th Cir. 2023) (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).  And the "core inquiry" of Section 706(2)(C) asks whether the rule in question is a "lawful extension of the statute under which the agency purports to act, or whether the agency has indeed exceeded its 'statutory jurisdiction, authority, or limitations.'"  *Id.* at 188 (quoting 5 U.S.C. § 706(2)(C)).  In this case, the Final Rule is unquestionably a "lawful extension of the statute[.]"  *Id.*  Plaintiffs do not actually dispute, nor could they, that the CPA expressly entrusted the CFPB with promulgating regulations, including those imposing additional data reporting requirements, to facilitate the purposes of the statute with respect to small businesses.  *See* 15 U.S.C. § 1691c-2(a)–(g).  The agency here has done exactly that, and even Plaintiffs do not question the Final Rule's intentions.  The Final Rule was promulgated in accordance with the CFPB's authority to do so, and the agency enacted the rule with the intent of furthering the purposes of Section 1071.  The rule thus does not run afoul of Section 706(2)(C), and that is the end of the matter.

In challenging the Final Rule's fidelity to the "purpose" of the statute under Section 706(2)(C), Plaintiffs conflate the inquiry into statutory authority—which the Court just explained they undoubtedly cannot prevail on—with an inquiry into the rule's effectiveness.  As put by the CFPB, Plaintiffs' argument "boils down to a disagreement with the *substance* of the Bureau's determinations, not a dispute about the Bureau's statutory authority to make those determinations."  Dkt. No. 91 at 15 (emphasis in original).  That is, each of Plaintiffs' arguments with respect to the Final Rule's adherence to the "purpose" of the statute is in substance an attack on the effectiveness of the regulation—i.e., a claim that the agency's action was unreasonable

and therefore arbitrary and capricious under Section 706(2)(A).[2]  *See* Dkt. No. 79 at 18–25 (providing reasons as to why the additional data points are ill-advised as a policy matter).  But however ineffective or counterproductive the substance of the Final Rule may be, Section 706(2)(C) is plainly not the proper vehicle to attack that substance; that is squarely within the province of Section 706(2)(A).  This argument therefore fails.

### 2.    Data Beyond Information Collected as Part of the Lending Process

Next, Plaintiffs do make a proper argument as to statutory authority under Section 706(2)(C)—just not a particularly convincing one.  Plaintiffs contend that the additional data requirements imposed by the Final Rule are unlawful because, aside from the information that the CPA explicitly requires the CFPB to collect, the agency cannot require reporting data that financial institutions would not otherwise collect as part of the loan application process.  *See* Dkt. No. 79 at 25–27.

Relevant to this argument are two particular provisions within Section 1071.  First, in subsection (b), which is entitled "Information gathering," the statute directs financial institutions to inquire whether the applicant "is a women-owned, minority-owned, or small business[.]"  15 U.S.C. § 1691c-2(b)(1).  And second, in subsection (e), which is entitled "Form and manner of information," the statute mandates that "[e]ach financial institution shall compile and maintain, in accordance with regulations of the Bureau, a record of the information provided by any loan applicant pursuant to a request under subsection (b)."  *Id.* § 1691c-2(e)(1).  Subsection (e) goes on to list out specific data points that financial institutions must collect and report.  *Id.* § 1691c-2(e)(2).  Particularly relevant to this case is subsection (e)(2)(H)—the authority pursuant to which the CFPB acted in promulgating the additional reporting requirements that Plaintiffs

---

[2] Indeed, as the Court already pointed out, this error is evident in Plaintiffs' pleadings, where they allege under Section 706(2)(C) that the rule is "an abuse of agency discretion" and promulgated "without any basis in the administrative record to do so."  *Supra* Part IV.A (citing Dkt. No. 12 at 17).

challenge.  Within subsection (e)(2), subsection (e)(2)(A)–(G) contains various substantive

statutory reporting requirements for financial institutions, and the final item, subsection

(e)(2)(H), provides for "any additional data that the Bureau determines would aid in fulfilling the

purposes of this section." *Id.*  § 1691c-2(e)(2)(H).  Plaintiffs advance the notion that item H "is

constrained to the information in [subsection (e)(1)]," Dkt. No. 79 at 26, which refers to

"information provided by any loan applicant" and back to subsection (b), i.e., the "Information

gathering" provision, which seeks to know whether the applicant "is a women-owned, minority-

owned, or small business[.]"  15 U.S.C. § 1691c-2(b)(1).  Essentially, their argument is that

because subsection (e)—namely (e)(2)—refers only to "disclos[ure]" and not collection, item H

cannot collect information that is not either mandated by subsection (b) or that the financial

institution must already collect as part of the application process.

      When interpreting particular statutory provisions, the court must read those provisions

contextually "and with a view to their place in the overall statutory scheme."  *Davis v. Mich.*

*Dep't of Treasury*, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).  Accordingly,

courts should avoid any interpretation that is incompatible with the rest of the law.  *United Sav.*

*Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98

L.Ed.2d 740 (1988).  The Court considers Plaintiffs' arguments with these principles in mind.

      Plaintiffs' argument is convoluted and relies on a series of inferences which clash with

the substance of the statutory text.  Specifically, they argue that subsection (b) cabins the

authority conferred to the agency under subsection (e) because the latter, entitled "Forms and

manners of information," concerns only what information financial institutions should *disclose*,

whereas the former, entitled "Information gathering," is where the statute sets forth what

information financial institutions must *collect*, i.e., inquire about.  *See* Dkt. No. 79 at 25–26.  By

their logic, subsection (e) does not confer onto the CFPB the authority to direct financial

institutions to "collect" additional data; and since subsection (e) requires reporting but confers no authority to collect, the data that the agency directs financial institutions to report must be data that is already collected as part of the loan application process. This argument is perhaps creative; it is also substantively incorrect.

While Plaintiffs focus on the titles of the two provisions, and the title of subsection (e) might arguably *sound* like it sets forth only data *reporting* requirements, Plaintiffs far overstate the probative value of a title. It is well-established that when it comes to interpreting a statutory scheme, headings and titles of a particular section "cannot limit the plain meaning of the text" and "are of use only when [it] shed[s] light on some ambiguous word or phrase," but "they cannot undo or limit that which the text makes plain." *Bhd. of R. R. Trainmen v. Balt. & O. R. Co.*, 331 U.S. 519, 529, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947); *see also Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008) ("[A] subchapter heading cannot substitute for the operative text of the statute."); *United States v. Johnson*, 632 F.3d 912, 924 (5th Cir. 2011) ("[H]eadings and titles are not meant to take the place of detailed provisions of the text."). Here, the operative text is unambiguous and belies the Plaintiffs' argument. It is true that subsection (e)(2) refers to data that the agency "shall . . . clearly and conspicuously disclose[.]" But a review of its substance reveals that multiple of these "reporting" requirements also have "collecting" requirements unmistakably built in.[3] For example, take items E and F, which instruct financial institutions to disclose, respectively, "the census tract in which is located the principal place of business of the . . . loan

---

[3] To be sure, for some of the requirements under subsection (e)(2), this point is inapplicable. For some of the requirements, the information requires no "collecting" on the part of the financial institutions because the information is, by its nature, already in their hands. For example, looking to items A and D, the financial institution would always have "the number of the application and the date on which the application was received," or "the type of action taken with respect to such application, and the date of such action." 15 U.S.C. § 1691c-2(e)(2)(A),(D).

applicant," and "the gross annual revenue of the business in the last fiscal year of the . . . loan applicant preceding the date of application." 15 U.S.C. § 1691c-2(e)(2)(E)–(F). Such information is not inherently within the financial institution's knowledge; thus, in order to comply with these statutory requirements and disclose this data, the financial institution implicitly must "collect" this information in the first place.[4]  Indeed, a contrary reading would produce a nonsensical result—one that not only undercuts the CFPB's express statutory authority to set forth additional data points but also is contradicted by multiple data points enumerated in subsection (b), such as items E and F, which evince the authority to "collect."  Thus, an informed understanding of subsection (e) reveals the proper interplay between it and subsection (b).  That is, viewing the two provisions in their proper contexts, it is unmistakable that subsection (b)— "Information gathering"—cannot be an exhaustive set of "collection" requirements, as the data points demanded in subsection (e)(2)—"Form and manner of information"—implicitly imposes various additional "collection" requirements.

        In sum, multiple of the items listed in subsection (e)(2) impose "collection" requirements for data which a financial institution might not otherwise receive during the application process.[5]  And with that understanding, there is no textual basis—within subsection (e)(2) or otherwise— for the proposition that a relevant distinction exists between item H and items A–G.  To the contrary, under the interpretive canon of *noscitur a sociis*, which counsels that "a word is known by the company it keeps," there is only reason to find similarity between item H and "the company it keeps": here, items A–G.  *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*,

---

        [4] This understanding is a given and one which Plaintiffs do not dispute—fittingly so, as it would be illogical to interpret subsection (e) as mandating financial institutions to report information that they are powerless to collect and is not inherently within their knowledge.

        [5] The Court also agrees with the CFPB's point that Plaintiffs' reading is "bizarre and unworkable" because it would mean that "the data that financial institutions are required to compile and report would depend almost entirely on what they themselves choose to ask for."  Dkt. No. 91 at 17.

515 U.S. 687, 694, 115 S.Ct. 2407, 132 L.Ed.2d 597 (1995). Because multiple of items A–G include implicit "collection" requirements, additional data points promulgated by the CFPB pursuant to item H may include the same requirements. The Court therefore finds that the CFPB plainly has the authority to demand financial institutions to collect information which it might not otherwise collect during the application process. The CFPB prevails on the Section 706(2)(C) claims.

### B.  SECTION 706(2)(A): ARBITRARY AND CAPRICIOUS

Before turning to the adequacy of the agency's explanation, the Court must first straighten out how Plaintiffs have utterly misrepresented the breadth of the Final Rule. First, and most flagrant, is Plaintiffs' characterization of the Final Rule as requiring "81 separate pieces of information, rather than the 13 data fields required by Congress." Dkt. No. 79 at 11; *see also* Dkt. No. 12 at 20 (likewise implying a jump from 13 to 81). As the Court noted already, the Final Rule only imposes 9 additional data points compared to the statute itself. *See supra* Part I.A (explaining that the Final Rule lists 20 data points, and only 9 of them are additional to those already provided in Section 1071). By repeatedly pointing to "81 separate pieces of information," Plaintiffs conflate—likely intentionally so—the number of data fields with the number of data points, since each data point might have a multitude of data fields.[6] The real "jump" is from 13 to 22 data points, not from 13 data points to 81 data fields; Plaintiffs' argument is akin to saying that by adding 1 additional car to a set of 3, there is a jump from 3 cars to 16 wheels.

Moreover, Plaintiffs also grossly exaggerate the size of the Final Rule, referring at various points to a 900-page rule. *See*, *e.g.*, Dkt. No. 79 at 29 (asserting that the agency

---

[6] Defendants offer the example of a person's name, which is one data point but requires three data fields—one for first name, another for middle initial, and another for last name. Dkt. No. 91 at 43–44.

24-40705.3401

"transform[ed]" a few pages of statutory text "into a 900+ page rule" ); Dkt. No. 12 at 2, 12

(referring, respectively, to "almost 900 pages of rulemaking" and "an 887-page, single-spaced

Final Rule").   But the Final Rule itself spans seven pages, *see* A.R. 000378–84, and the

remaining hundreds of pages that Plaintiffs lump into the rule are in fact explanations for the

rule.[7]  Here, just as was the case with the data points versus data fields distinction, Plaintiffs

attempt to portray the Final Rule as much more imposing than it actually is.   Thus, whatever its

lawfulness, the Final Rule is much more modest than Plaintiffs would lead the Court to believe.

*See* Dkt. No. 79 (referring at various points to a "massive," "vast," and "exponential"

expansion).   Having ascertained a fair understanding of the Final Rule, the Court finally turns to

whether it is arbitrary and capricious.

        The APA directs courts to "hold unlawful and set aside" agency actions that are

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."   5 U.S.C.

§ 706(2). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable

and reasonably explained."   *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423, 141 S.Ct.

1150, 209 L.Ed.2d 287 (2021). This standard "is deferential," and the Court "may not substitute

its own policy judgment for that of the agency."   *Id.*  But the Court must also ensure "that the

agency has acted within a zone of reasonableness and, in particular, has reasonably considered

the relevant issues and reasonably explained the decision."   *Id.*  "Put simply, [courts] must set

aside any action premised on reasoning that fails to account for 'relevant factors' or evinces 'a

clear error of judgment.'"   *Univ. of Tex. M.D. Anderson Cancer Ctr. v. HHS*, 985 F.3d 472, 475

(5th Cir. 2021) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104

L.Ed.2d 377 (1989)).

---

        [7] In teasing out this misrepresentation, it does not go unnoticed that Plaintiffs' central argument at this
juncture is, ironically, that the agency did not adequately explain itself.

Under Counts III and IV, Plaintiffs challenge the Final Rule as arbitrary and capricious under the APA.  Dkt. No. 12 at 18–20; *see* 5 U.S.C. § 706(2)(A).  While Plaintiffs purport to make multiple arguments as to how the rule is arbitrary and capricious, those arguments can be boiled down to the central contention that the CFPB's issuance of the Final Rule is arbitrary and capricious because the agency failed to adequately consider its disproportionate costs and the negative effects that those costs will impose on customers and financial institutions alike.  *See* Dkt. No. 79 at 27–40; Dkt. No. 12 at 18–20.  Specifically, they assert that the agency's cost evaluation was flawed and that the agency's cost-benefit analysis was inadequate.  But the former contention bleeds into the latter, and both arguments advance the same overarching thesis: that the agency failed to adequately consider the Final Rule's costs and the effects of those costs.[8]  In that same vein, the attack on the agency's cost-benefit analysis argues that the purported benefits of the Final Rule are overstated and dwarfed by the costs.  The Court will first assess the adequacy of the agency's analysis with respect to the Final Rule's costs before turning to the same with respect to its benefits.

### 1.    Costs of the Final Rule

The costs associated with the Final Rule can be divided into four categories: (1) one-time costs to financial institutions, (2) ongoing costs to financial institutions, (3) availability to small

---

[8] The Court would reiterate at this juncture that while the Final Rule prescribes 20 data points, only 9 of them are additional, and at issue before the Court is the lawfulness of the Bureau's issuance of those nine additional data points.  So while Plaintiffs gripe primarily about the costs of collecting and reporting the various data points under Section 1071, the Final Rule itself is only responsible for a fraction of the data points—the majority of which are attributable to the statute itself, not to the agency's regulation.  In attacking the costs purportedly imposed by the agency, it is important to remember that while those costs cannot be isolated and attributable to particular data points, a majority of those costs are in fact owed to the statute itself.

Nevertheless, while the costs purportedly imposed by the agency cannot be readily isolated and attributable to particular data points, the Court must still consider the nine additional data points because they are parts of the whole.  To do so, the Court can only look to whether the agency has adequately addressed the costs and benefits of the whole—i.e., all the data points.  But if the agency has done so, it then necessarily has adequately addressed the parts—i.e., the specific data points at issue.  This point, while perhaps unspectacular, bears mentioning.

18 / 28

businesses, and (4) affordability to small businesses.  *See, e.g.*, A.R. 000343–45.  For each

category, the administrative record provides adequate support for the agency's course of action.

a.    <u>The Administrative Record</u>

With respect to the one-time costs to financial institutions, the agency employed an

intricate cost methodology based on a survey of responses received from over one hundred

financial institutions.  *See* A.R. 000023, 000358–61.  The agency also critically engaged with

various components of one-time costs, including addressing shortcomings in the methodology.

*See* A.R. at 000358–61.  One such shortcoming acknowledged by the CFPB is that the

methodology was based on a cost survey which in turn was based on the 13 statutorily mandated

data points, i.e., did not include the additional data points.[9]  A.R. 000360.  Based on the

information it had, the CFPB concluded that "accounting for the additional data points would

only increase the one-time cost estimates by a small amount because most of the one-time costs

come from a financial institution moving from not reporting 1071 data to being required to report

such data."  A.R. 000360.  In addressing comments from the industry, the Bureau noted that

some financial institutions expressed concern over implementing the firewall, some expressed

concern over the proposed implementation period, and some stated, without providing data, that

the agency had certain costs too low.  A.R. 000360–61.  The agency responded to the firewall

concerns by making allowances for financial institutions in lieu of implementing a firewall.  A.R.

000361.  It also explained that costs are institution-specific, and most estimates provided are

broadly consistent with its own calculations, which it preferred to rely on absent more concrete

data.  A.R. 000361.  The Bureau also made changes to accommodate these comments, including

implementing tiered compliance dates to benefit smaller financial institutions, as well as raising

---

[9] The agency previously sought estimates which included the additional data points but did not receive any leading up to the implementation of the Final Rule.  A.R. 000360.

the proposed threshold of 25 covered originations to 100 covered originations—altogether exempting many smaller financial institutions.  A.R. 000361.

    As for ongoing costs to financial institutions, the Bureau, like it did with its estimate of the one-time costs, provided an extensive account of its calculations.  *See* A.R. 000361–64.  The Bureau relied in part on analysis from an analogous final rule promulgated under the Home Mortgage Disclosure Act ("HMDA"),[10] with adapted methodology to account for the different context here, i.e., from mortgage lending to small business lending.  *See* A.R. 000347, 000352. And in explaining its decisions to largely not adjust its ongoing cost estimates, the agency addressed various comments and other considerations, including why those considerations did not prompt change.  *See* A.R. 000361–64.  Notably, the Bureau deduced that the financial institutions themselves are unlikely to bear ongoing costs, as these costs are likely to pass on to the small businesses in the form of higher interest rates or fees.  *See*, *e.g.*, A.R. 000364, 000368, 000377.

    With respect to costs to small businesses, the Bureau focused on the indirect costs because the direct costs are essentially just filling out a few additional data fields in an application, which the Bureau concluded is a negligible burden.  A.R. at 000364.  One indirect cost is the availability for credit to small businesses, i.e., small business credit supply.  Applying direct survey data, standard microeconomics theory, and rational behavioral hypotheses, the Bureau ultimately concluded that a significant disruption in credit supply is unlikely.  *See* A.R. at 000364–66.  Specifically, all of the data and inferences indicated that the likely industry response would be raising interest rates and fees as opposed to limiting credit access.  *See* A.R. at 000364–66.

---

[10] The Bureau also administers the HMDA.  *See* 12 U.S.C. § 2804(a); 12 C.F.R. § 1003.1(a).

Finally, the affordability of credit for small businesses is the other indirect cost.  On this concern, the Bureau—as just discussed—estimated that borrowers would be adversely impacted in the form of higher interest rates and fees.  The Bureau found that direct survey data, standard microeconomics theory, rational behavioral hypotheses, and insights from commenters together all supported that conclusion.  *See* A.R. at 000364–66.  But the agency proceeded to determine that even if the costs were passed on in full, the increase would still "comprise a small portion of the total cost of the average loan" and thus would not meaningfully affect affordability.  A.R. at 000365.

### b.  Application

After reviewing the administrative record in detail, the Court finds that the agency has comfortably satisfied its duty to "reasonably consider[] the relevant issues and reasonably explain[] the decision."  *Prometheus Radio Project*, 592 U.S. at 423, 141 S.Ct. 1150.  For each of Plaintiffs' contentions that the agency "failed to consider" an important aspect of the problem, what they really take issue with is the agency's bottom-line decision.[11]  Take a few examples. For one, Plaintiffs assert that the Bureau avoided and failed to consider that the Final Rule would "result in an attendant loss of credit access for small businesses[.]"  Dkt. No. 79 at 28.  But the Bureau did evaluate that very concern and methodically explained why it believed that concern was unfounded.  *See supra* Part IV.B.1.a.  Similarly, Plaintiffs argue that the Final Rule did not account for the fact that small banks were the ones extending the largest percentage of small business loans and most impacted by compliance costs.  Dkt. No. 79 at 29–30.  But the Final Rule did precisely that; the Bureau did not only address those concerns, it in fact accommodated them by extending relief to smaller financial institutions.  Most prominent among the relief is the

---

[11] To consider position A and then go with position B, while explaining why position B is preferable to position A, is not to have ignored position A.

Bureau's decision to adjust the threshold from 25 to 100 covered credit transactions and, in so doing, the Bureau explained why that figure strikes the appropriate balance. A.R. 000108, 000366–67. Third, the Bureau did not fail to account for the different contexts between the HMDA and the Final Rule, as the agency recognized that differences existed, implemented adaptations, and explained those adaptations. *See* A.R. 000026, 000347, 000352. Fourth, Plaintiffs assert that the Bureau ignored litigation and reputational risks owed to the data collection. Dkt. No. 79 at 37. But the Bureau did consider these costs. It observed that Plaintiffs' purported costs came without any specific estimates and were difficult to quantify, and in light of that unknown, the agency explained why it preferred its own projections which suggested that the Final Rule would actually result in the opposite, i.e., a reduced compliance burden. A.R. 000357, 000363. And fifth, Plaintiffs contend that the Final Rule failed to consider the impact on borrowers from rural regions. Dkt. No. 79 at 36. This argument is unfounded, as the Bureau not only dedicated two pages to that precise issue, but in fact did so under the subheading entitled "Potential Impact on Small Businesses in Rural Areas." A.R. 000368–69. These examples are not exhaustive, but are representative of all of Plaintiffs' allegations as to what the agency "failed" to consider.

Plaintiffs additionally argue that the Bureau considered imprecisely, including by relying on a one-time costs survey that Plaintiffs deem flawed. Dkt. No .79 at 32–34. But the Fifth Circuit has recognized that no model is perfect, and its "shortcomings must be significant"—a high bar that is only met when the model "bears no relationship to the reality it purports to represent." *Texas v. EPA*, 91 F.4th 280, 297 (5th Cir. 2024) (quotation omitted). That a model has imperfections or limitations "is not, in itself, a reason to remand agency decisions based upon it." *Id.* (quotation omitted). Indeed, the Supreme Court has explained that reliance on imperfect data is a reality of executive branch decisionmaking, and "[t]he APA imposes no

general obligation on agencies to conduct or commission their own empirical or statistical studies." *Prometheus Radio Project*, 592 U.S. at 423, 141 S.Ct. 1150. Here, it cannot be said that the models relied upon by the Bureau "bear[] no relationship," and even Plaintiffs do not go that far. To the extent the agency relied on, for example, data from the one-time cost survey or the HMDA final rule, such reliance is unproblematic.

Upon inspection, the record illustrates that the agency has adequately considered the relevant issues, including those raised in the comments that Plaintiffs accuse them of avoiding.[12] In *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421 (5th Cir. 2021), the Fifth Circuit rejected multiple arguments that the agency failed to consider evidence-based comments, finding that the agency did not act arbitrarily and capriciously because it acknowledged the evidence, engaged with it, and simply "weighed the evidence differently . . . and reached contrary but reasonable policy conclusions." *Id.* at 451. Likewise, in *Texas v. EPA*, 91 F.4th 280, the Fifth Circuit rejected a challenge to the EPA's reliance on a model of air quality provided by the Sierra Club instead of a different source. The Fifth Circuit explained that the agency did not act arbitrarily and capriciously because "by addressing the Petitioners' concerns and explaining why they were not merited with a plausible explanation, the EPA did not fail to consider an important aspect of the problem." *Id.* at 293 (cleaned up). As stated in *Huawei*, the APA requires only that the agency engage with the comments and offer reasoned replies. 2 F.4th at 450.

These cases elucidate a straightforward proposition that has seemingly evaded Plaintiffs' understanding—that an agency does not fail to "consider" a concern or suggestion simply because it reached a different conclusion. The Bureau considered the various costs in detail,

---

[12] This is assuming that each of the comments raised in the rulemaking are even significant in the first instance, as agencies need not respond to every point but only "significant" ones. *See Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 n.58 (D.C. Cir. 1977) (explaining that significant comments are those "which, if true, raise points relevant to the agency's decision and which, if adopted, would require a change in an agency's proposed rule").

engaged with the various concerns, data, and methodologies, and ultimately based its determinations on plausible justifications. The Court therefore finds that the agency has reasonably considered the costs of the relevant portions of the Final Rule, i.e., the nine additional data points at issue.[13]

### 2.   **Benefits of the Final Rule**

The benefits associated with the Final Rule can be divided into two categories: benefits to financial institutions and benefits to small businesses.  The Bureau reasonably explained its consideration of each.

### a.   The Administrative Record

For both financial institutions and small businesses, the Bureau acknowledged at the outset of its benefits analysis that the nature of many of the benefits makes them difficult to readily quantify with precision.  A.R. 000344.  The Bureau relies, then, on "[g]eneral economic principles, together with the limited data available," to assess the positive impacts which the agency believes will occur.  A.R. 000344.

With respect to financial institutions, the Bureau identified multiple benefits of the Final Rule.  First, the agency observed that the reporting requirements will lower the "false positive" rates during fair lending review prioritization, thereby reducing the burden on institutions with lower fair lending risk.  A.R. 000357.  Second, and in that same vein, financial institutions will also be able to better assess their own lending risks and proactively avoid potential liability. A.R. 000357.  And third, this data collection will equip covered financial institutions with comprehensive information that they currently do not have, which will better inform their products and decisions.  A.R. 000357.  Addressing the comments, the Bureau noted that while a

---

[13] *See supra* note 8.

broad range of groups echoed the Bureau's anticipated benefits, several industry commenters believed the purported benefits to be overstated and minimal.  A.R. 000357.  The Bureau responded by referencing its earlier accounting of the various benefits to financial institutions and expressing confidence that the data will provide comprehensive data which will shed light for even highly specialized lenders to better understand their own and potential markets.  A.R. 000357–58.

The Bureau likewise identified multiple benefits with respect to small businesses.  First, the agency reiterated how the data collection in the Final Rule "will be the largest and most comprehensive dataset in the United States on credit availability for small businesses."  A.R. 000354.  And the Bureau listed a multitude of different ways that this newfound insight and transparency will in turn facilitate fair lending enforcement as well as increased and better-tailored credit access.[14]  *See* A.R. 000354–56.  The Bureau recounted much positive feedback from a diverse list of commenters, as well as much negative feedback from financial institutions and trade associations who believed that the benefits would be minimal and overweighed by the costs.  See A.R. 000356–57.  In response, the Bureau acknowledged that the benefits are difficult to precisely estimate.  A.R. 000357.  However, the agency ultimately referred back to and stood by its earlier analysis, including its methodology and reliance on the best information available.  A.R. 000357.

The Bureau also specifically considered the costs and benefits of alternatively omitting the additional data points at issue in this case and limiting data collection to only those already prescribed by the statute in items A–G.  *See* A.R. 000367–68.  The Bureau determined that omitting the additional data points would run counter to each of the two statutory purposes of

---

[14] The Bureau explained that while this data will benefit small businesses in those ways, it may be other actors that use the data to do so, including governmental entities, communities, academics and advocates, and creditors.  *See* A.R. 000355–56.

Section 1071.  A.R. 000367.  In so finding, the agency detailed, including with multiple examples, how taking away from the additional data points would detract from an otherwise fuller, more useful picture that the data collection would paint.  A.R. 000367.

b.    Application

Plaintiffs claim that the Bureau overestimated the benefits of data collection and reached its "optimistic conclusion" despite comments which claimed that the data would bring only marginal-at-best benefits.  Dkt. No. 79 at 32.  But Plaintiffs ignore that an assortment of stakeholders also praised the Final Rule and identified tangible, meaningful benefits that they anticipate.  *See* A.R. 000356–57.  Indeed, applying Plaintiffs' logic, had the agency decided that the data would bring marginal-at-best benefits, that finding would also be arbitrary and capricious for "ignoring" comments which attested to the Final Rule's benefits.  The bottom line is that the record before the agency simply did not paint the wholly one-sided picture that the record would require for the Court to hold that the agency did not act reasonably.

Moreover, the Bureau's invocation of "difficult-to-quantify, intangible benefits" is not the dagger to the heart of the Final Rule as Plaintiffs would believe, as courts have stressed "the deferential nature of our review in this context."  *Huawei*, 2 F.4th at 455.  In *Huawei*, the Fifth Circuit found that there was "no hard evidence that the rule's claimed benefits would accrue," but nevertheless accepted the agency's belief that the rule would bring difficult-to-quantify benefits including "avoiding network disruption and surveillance [and] possible data breaches," and "preventing detrimental impacts to national defense, public safety, homeland security, military readiness, and critical infrastructure, as well as the resulting loss of life that could occur if national communications networks were disrupted."  *Id.* at 454.  Similarly, in *Charter Commc'ns, Inc. v. FCC*, 460 F.3d 31 (D.C. Cir. 2006), the D.C. Circuit rejected a challenge to a cost-benefit analysis where the agency identified difficult-to-quantify benefits such as "potential savings to consumers from greater choice among navigation devices," the "spurring of

technological innovations," and Congress's view of the commercial availability of navigation devices "as a benefit in and of itself." *Id.* at 42.  In short, it is perfectly acceptable for agencies to make a reasonable predictive judgment based on the evidence before it, including when that judgment "relies on unquantifiable benefits." *Huawei*, 2 F.4th at 455.

***

In sum, the Bureau has satisfied its obligation to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983) (internal quotation marks omitted). While a "serious flaw" can render a rule unreasonable, courts afford agencies "considerable discretion" in conducting complex cost-benefit analyses which "epitomize the types of decisions that are most appropriately entrusted to the expertise of an agency." *Huawei*, 2 F.4th at 452 (quoting *Charter Commc'ns*, 460 F.3d at 42).  Here, the administrative record is voluminous and its breakdown of the Bureau's decisionmaking is comprehensive; moreover, the agency has reasonably assessed the effects of the Final Rule, including its anticipated costs versus benefits. The Court therefore "do[es] not find the agency's action outside the realm of reasonableness," *id.* at 456, and the Bureau will prevail on Plaintiffs' arbitrary-and-capricious claims.

## V.    CONCLUSION

In light of the foregoing analysis, the Court finds that Defendants is entitled to judgment as a matter of law on each of Plaintiffs' APA claims.  In reaching this conclusion, the Court expresses no opinion on the wisdom of the Final Rule.  It may well be that the Final Rule proves ill-advised as a policy matter, but that possibility does not itself make the Final Rule unlawful under the APA.  Accordingly, the Court hereby **ORDERS**:

Plaintiffs'/Intervenors' Motion to Supplement the Administrative Record (Dkt. No. 78) is **DENIED**, Plaintiffs'/Intervenors' Consolidated Motion for Summary Judgment (Dkt. No. 79) is

**DENIED**, and Defendants' Combined Cross-Motion for Summary Judgment (Dkt. No. 91) is **GRANTED**. While this Order resolves every live claim, the Court must still rule on the Farm Credit Intervenors' Motion to Amend the Complaint in Intervention (Dkt. No. 108), the resolution of which may introduce an additional claim to this case. Accordingly, entry of final judgment is inappropriate at this juncture, and the Clerk of Court is **DIRECTED** to keep this case open.

     SO ORDERED August 26, 2024, at McAllen, Texas.

Randy Crane
Chief United States District Judge

# TAB 4

United States District Court
Southern District of Texas
**ENTERED**
September 23, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| TEXAS BANKERS ASSOCIATION, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:23-CV-144 |
| | § | |
| CONSUMER FINANCIAL PROTECTION | § | |
| BUREAU, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## FINAL JUDGMENT

Pursuant to the Court's memorandum opinion and order granting the defendants' combined cross-motion for summary judgment, Dkt. 115, and the Court's order granting the intervenor-plaintiffs' withdrawal of their motions to amend complaint in intervention and for judgment on the pleadings, Dkt. 121, it is hereby ordered that this case is dismissed with prejudice.

**THIS IS A FINAL JUDGMENT.**

All pending motions are denied as moot. All court settings are vacated.

The clerk will provide copies of this judgment to the parties.

SO ORDERED September 23, 2024, at McAllen, Texas.

Randy Crane
Chief United States District Judge

24-40705.3465

# TAB 5

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on December 3, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Robert M. Loeb*

Robert M. Loeb
*Counsel for Plaintiffs-Appellants Texas Bankers Association, Rio Bank, and American Bankers Association*