No. 24-40705

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Texas Bankers Association; Rio Bank, McAllen, Texas; American Bankers Association; Texas First Bank; Independent Bankers Association of Texas; Independent Community Bankers of America,

*Plaintiffs-Appellants,*

v.

Consumer Financial Protection Bureau; Rohit Chopra, in his official capacity as Director of the Consumer Financial Protection Bureau,

*Defendants-Appellees,*

v.

Texas Farm Credit; Farm Credit Council; Capital Farm Credit,

*Intervenor Plaintiffs-Appellants,*

v.

XL Funding, L.L.C.; Equipment Leasing and Finance Association; Rally Credit Union; Credit Union National Association; Cornerstone Credit Union League,

*Intervenors-Appellants.*

---

On appeal from the United States District Court for the Southern District of Texas
Civil Action No. 7:23-cv-144
Hon. Randy Crane

---

# MOTION OF RISE ECONOMY AND THE NATIONAL ASSOCIATION
# FOR LATINO COMMUNITY ASSET BUILDERS TO INTERVENE

---

Rachel L. Fried
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION

P.O. Box 34553
Washington, DC 20043
(202) 448-9090

*Counsel for Intervenors*

## CERTIFICATE OF INTERESTED PERSONS
**No. 24-40705, Texas Bankers Association et al. v. Consumer Financial Protection Bureau et al.**

The undersigned counsel of record certifies that, in addition to those already listed in those briefs already filed by the parties and *amici*, the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Intervenors:** Rise Economy and the National Association for Latino Community Asset Builders.

**Counsel:** Democracy Forward Foundation (Robin F. Thurston and Rachel L. Fried).

Pursuant to Fed. R. App. P. 26.1, Rise Economy and the National Association for Latino Community Asset Builders certify that they have no outstanding shares or debt securities in the hands of the public, they have no parent companies, and no publicly held company has a 10% or greater ownership interest in either organization.

Dated:       January 17, 2025                    Respectfully submitted,

                                                 /s/ Rachel L. Fried
                                                 Rachel L. Fried
                                                 *Counsel for Intervenors*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................2

ARGUMENT .........................................................................................6

    I.    Intervenors' Motion is Timely. ................................................8

    II.   Intervenors Have an Interest in the Regulation that is the Subject of this Action..............................................................................................11

    III.  Failure to Defend the Final Rule, or Further Delay in its Implementation and Enforcement, will Impair or Impede Intervenors' Ability to Protect their Interests..........................................................12

    IV.  No Party to this Matter Adequately Represents Intervenors' Interests..14

CONCLUSION ....................................................................................16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Brumfield v. Dodd,*
   749 F.3d 339 (5th Cir. 2014) ....................................................3, 11, 14

*California Reinvestment Coalition, et al. v. Chopra et al.,*
   Case No. 4:19-cv-02572-JSW (N.D. Cal. April 5, 2023) ....................................10

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,*
   595 U.S. 267 (2022) ....................................................6, 8, 10

*Ceres Gulf v. Cooper,*
   957 F.2d 1199 (5th Cir. 1992) ....................................................11

*Clean Air Council v. Pruitt,*
   862 F.3d 1 (D.C. Cir. 2017) ....................................................5, 13

*Clean Water Act v. EPA,*
   936 F.3d 308 (5th Cir. 2019) ....................................................5, 13

*Cook Cnty., Illinois v. Mayorkas,*
   340 F.R.D. 35 (N.D. Ill. 2021) ....................................................8, 9

*Cook Cnty., Illinois v. Texas,* 37 F.4th 1335 (7th Cir. 2022) ....................................................9

*Edwards v. Houston,*
   78 F.3d 983 (5th Cir. 1996) (*en banc*) ....................................................11

*Heaton v. Monogram Credit Card Bank of Georgia,*
   297 F.3d 416 (5th Cir. 2002) ....................................................4, 14, 15

*International Tank Terminals, Ltd. v. M/V Acadia Forest,*
   579 F.2d 964 (5th Cir. 1978) ....................................................7

*John Doe No. 1 v. Glickman,*
   256 F.3d 371 (5th Cir. 2001) ....................................................9, 10, 14

*La Union del Pueblo Entero v. Abbott,*
   29 F.4th 299 (5th Cir. 2022) ....................................................7

*McDonald v. E.J. Lavino Co.*,
    430 F.2d (5th Cir. 1970) .......................................................................9

*Open Cmtys. All. v. Carson*,
    286 F. Supp. 3d 148 (D.D.C. 2017) ...........................................5, 13

*Richardson v. Flores*,
    979 F.3d 1102 (5th Cir. 2020) .........................................................6

*Ross v. Marshall*,
    426 F.3d 745 (5th Cir. 2005) ....................................................8, 9, 10

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) .........................................................11

**Statutes**

5 U.S.C. § 553 ......................................................................................5, 13

**Other Authorities**

Amended Complaint, Doc. No. 24, *California Reinvestment Coalition,
    et al. v. Kraninger, et al.*, Case No. 4:19-cv-02572-JSW (N.D. Cal.
    June 27, 2019) ...........................................................................*passim*

Donald J. Trump (@realDonaldTrump), truthsocial.com (Nov. 12,
    2024, 7:46 PM),
    https://truthsocial.com/@realDonaldTrump/posts/11347288487474
    0859..................................................................................................16

Elon Musk (@elonmusk), X (Nov. 27, 2024, 12:35 AM),
    https://x.com/elonmusk/status/1861644897490751865. ....................16

Fed. R. Civ. P. 24(a)(2) ..........................................................................7

Stipulated Settlement Agreement, Doc. No. 53, *California
    Reinvestment Coalition, et al. v. Kraninger, et al.*, Case No. 4:19-cv-
    02572-JSW (N.D. Cal. Feb. 26, 2020) .............................................2

Stipulation of Dismissal, Doc. No. 73, *California Reinvestment
    Coalition, et al. v. Kraninger, et al.*, Case No. 4:19-cv-02572-JSW
    (N.D. Cal. April 5, 2023) ...........................................................2, 10

Under Rule 27 of the Federal Rules of Appellate Procedure and Fifth Circuit Rule 27(a)(1), Rise Economy (f/k/a the California Reinvestment Coalition) and the National Association for Latino Community Asset Builders (NALCAB) (collectively, Intervenors) respectfully move to exercise their right to intervene in order to ensure the continuation of the appeal of the district court's ruling granting summary judgment in favor of the Consumer Financial Protection Bureau (CFPB) and Director Rohit Chopra. *See* Memorandum Opinion and Order, Doc. No. 115, *Texas Bankers Association, et al. v. Consumer Financial Protection Bureau, et al.*, Civil Action No. 7:23-CV-144 (S.D. Tex. Aug. 26, 2024); Final Judgement, Doc. No. 123, *Texas Bankers Association, et al. v. Consumer Financial Protection Bureau, et al.*, Civil Action No. 7:23-CV-144 (S.D. Tex. Sep. 23, 2024); Plaintiffs' Notice of Appeal, Doc. No. 125, *Texas Bankers Association, et al. v. Consumer Financial Protection Bureau, et al.*, Civil Action No. 7:23-CV-144 (S.D. Tex. Oct. 23, 2024).

Pursuant to Fifth Circuit Rule 27.4, counsel for Intervenors have contacted all parties to this appeal. Intervenors understand that the parties will oppose the motion.

# INTRODUCTION

In 2019, Rise Economy (f/k/a/ the California Reinvestment Coalition) and NALCAB, together with two individual plaintiffs, sued the CFPB and its then-director Kathleen L. Kraninger under the Administrative Procedure Act over the CFPB's unlawful delay in promulgating regulations under Section 1071 of the Dodd-Frank Act.  *See* Amended Complaint, Doc. No. 24, *California Reinvestment Coalition, et al. v. Kraninger, et al.*, Case No. 4:19-cv-02572-JSW (N.D. Cal. June 27, 2019) ("Kraninger Amended Complaint").  In that litigation, Intervenors and their co-plaintiffs detailed the significant harms engendered by the continued lack of availability of Section 1071 data, caused by the CFPB's unlawful and unreasonable delay in promulgating Section 1071 regulations.  *See, e.g.*, Kraninger Amended Complaint, ¶¶ 45, 48–51, 53, 55–60, 64.  In February 2020, the parties reached a settlement in which, among other things, the CFPB agreed to a timeline to finalize its Section 1071 regulations.  *See* Stipulated Settlement Agreement, Doc. No. 53, *California Reinvestment Coalition, et al. v. Kraninger, et al.*, Case No. 4:19-cv-02572-JSW (N.D. Cal. Feb. 26, 2020) ("Kraninger Stipulated Settlement").[1]

---

[1] In 2023, following the CFPB's issuance of the Final Rule under Section 1071, the parties stipulated to dismissal of that case. *See* Stipulation of Dismissal, Doc. No. 73, *California Reinvestment Coalition, et al. v. Kraninger, et al.*, Case No. 4:19-cv-02572-JSW (N.D. Cal. April 5, 2023).

Nearly five years have passed since the parties to that litigation reached their settlement, and nearly fifteen years have passed since Congress enacted Section 1071 mandating that the CFPB collect and report information related to small business lending. Although the CFPB met its obligations under the 2020 settlement agreement and promulgated the Final Rule at issue in this proceeding, Section 1071 data remain unavailable and the timeline for receiving the data has been significantly delayed, in large part due to the litigation underlying this appeal. Intervenors have well-founded concerns that, following the January 20, 2025, scheduled inauguration of a new presidential administration and accompanying changes in CFPB leadership, the CFPB will not robustly defend its Final Rule or will improperly acquiesce to further delays in the implementation of the Rule via these proceedings (for example, by agreeing to a stay of the compliance dates), thereby undercutting the interests that Intervenors asserted and protected through the 2020 settlement and impairing Intervenors' ability to protect those interests.

The CFPB ordinarily defends its regulations when they are challenged in the United States Courts of Appeals, as it has done in this matter to date. The Bureau's defense has so far been adequate to protect Intervenors' interests in the Final Rule and the data collection and reporting it will engender. Nevertheless, following the change in administration and accompanying change in CFPB leadership, there is a substantial risk that Intervenors' interests will cease to be adequately represented by

the CFPB, and intervention is therefore warranted. *See Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) ("We cannot say for sure that the state's more extensive interests will in fact result in inadequate representation, but surely they *might*, which is all that the rule requires."); *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 425 (5th Cir. 2002) (intervention permitted where intervenors' interests and party's interests "may diverge in the future, even though, at [the time of intervention] they appear to share common ground"). Here, the change in administration raises a serious risk that the Bureau might not robustly defend the Final Rule or will improperly acquiesce to delay the implementation of the Final Rule via these proceedings. During President Trump's prior administration, the CFPB took significant actions to delay implementation of Section 1071, which led to the need for Intervenors' prior lawsuit.[2]

---

[2] As detailed in the Kraninger Amended Complaint, the replacement of then-Director Richard Cordray with Acting Director Mick Mulvaney and, subsequently, Director Kathleen Kraninger, stagnated the already-delayed timeline for implementing Section 1071. During this period, the CFPB disengaged from discussions about the importance of Section 1071, fired all 25 members of the CFPB's Consumer Advisory Board—many of whom had advocated to the CFPB for implementation of Section 1071—and indefinitely delayed the timeline for implementation of Section 1071 in favor of unrelated discretionary activities which, unlike Section 1071 implementation, were not mandated by Congress. *See* Kraninger Amended Complaint at ¶¶ 36—43. Indeed, the CEO of Rise Economy, Paulina Gonzalez-Brito, was among the Consumer Advisory Board members who advocated for implementation of Section 1071 and was fired during the first Trump Administration.

The propriety of intervention is confirmed by the factors this Circuit considers when evaluating a motion for intervention on appeal:  Intervenors have sought to intervene in a timely manner to protect their unique interests in this proceeding and its outcome, and no prejudice or delay will result from intervention.  The serious risk that the CFPB may fail to robustly defend the Rule or will improperly acquiesce to delay as part of these proceedings means that Intervenors' interests will not be adequately represented by existing parties, and Intervenors' ability to protect their interests will be impaired.

An agency may decide to revisit its own lawfully promulgated rule, including changing compliance dates—but to do so, it must follow the APA procedures for issuing a new or revised regulation. *See 5* U.S.C. § 553; *see also, e.g., Clean Water Act v. EPA*, 936 F.3d 308, 314 (5th Cir. 2019) (explaining that "modification of effective dates is itself a rulemaking" that requires compliance with APA procedures); *Clean Air Council v. Pruitt*, 862 F.3d 1, 8–9, 14 (D.C. Cir. 2017) (vacating agency stay of its own rule announced without notice-and-comment rulemaking); *Open Cmtys. All. v. Carson*, 286 F. Supp. 3d 148, 162–63 (D.D.C. 2017) (similar, and collecting citations).  If the CFPB attempts to circumvent these APA requirements by delaying implementation of the Final Rule via these proceedings (for example, by agreeing to a stay of the compliance dates), it would impede Intervenors' ability to protect their interests.

Rise Economy and NALCAB therefore move to intervene in this case so they can defend the CFPB's 1071 Final Rule, oppose any attempts to delay or undermine the Rule via these proceedings, and protect their interests in the timely implementation of the Rule and availability of the data called for by the Rule.

## ARGUMENT

Although "[n]o statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed," intervention on appeal is permitted, and courts—including the Supreme Court and this Court—look to "the 'policies underlying intervention' in the district courts, including the legal 'interest' that a party seeks to 'protect'" to determine whether intervention should be allowed. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 277 (2022) (citing *Automobile Workers v. Scofield*, 382 U.S. 205, 217 n.10 (1965); Fed. R. Civ. P. 24(a)(2)). This Circuit is no different: appellate "intervention [is] permissible," in "exceptional cases," because "the policies underlying intervention (in the district courts) may be applicable in appellate courts." *Richardson v. Flores*, 979 F.3d 1102, 1104 (5th Cir. 2020) (quoting *United States v. Bursey*, 515 F.2d 1228, 1238 n.24 (5th Cir. 1975))(internal marks omitted).

Those policies underlying intervention are reflected in Federal Rule of Civil Procedure 24, which requires district courts to permit intervention from a person who "claims an interest relating to the property or transaction that is the subject of

the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To satisfy these requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)); *see International Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). As this Court has noted, "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *La Union*, 29 F.4th at 305 (internal marks omitted) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

Appellate intervention should be granted. For years the CFPB unlawfully withheld and unreasonably delayed implementation of the congressional mandate to collect and report small business lending data under Section 1071, ultimately requiring a settlement in which Intervenors and the CFPB agreed to a timeline to finalize such regulations. Intervention is warranted in light of that settlement and Intervenors' related direct and substantial interests in these proceedings, combined with the serious risk that a change in administration and CFPB priorities would lead

the CFPB to take actions in these proceedings—such as a failure to robustly defend its Rule or improper acquiescence to delay—that would impair Intervenors' ability to protect those interests.

## I.    Intervenors' Motion is Timely.

This motion is timely because, until the change in administration occurring on January 20, 2025, Intervenors "could count on [the agency] to defend the challenged regulation." *Cook Cnty., Illinois v. Mayorkas*, 340 F.R.D. 35, 45 (N.D. Ill. 2021), *aff'd sub nom. Cook Cnty., Illinois v. Texas*, 37 F.4th 1335 (7th Cir. 2022).

Timeliness analyses are "'contextual,' and should not be used as a 'tool of retribution to punish the tardy would-be intervenor, but rather [should serve as] a guard against prejudicing the original parties by the failure to apply sooner.'" *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)). "'Timeliness is to be determined from all the circumstances,' and 'the point to which [a] suit has progressed is . . . not solely dispositive.'" *Cameron*, 595 U.S. at 279 (quoting *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)). This Court considers four factors when evaluating the timeliness of an intervention motion:

> Factor 1. The length of time during which the would-be intervenor actually or reasonably should have known of his interest in the case before he petitioned for leave to intervene. Factor 2. The extent of prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the

8

case. Factor 3. The extent of the prejudice that the would-be intervenor
may suffer if his petition for leave to intervene is denied. Factor 4. The
existence of unusual circumstances militating either for or against a
determination that the application is timely.

*Ross*, 426 F.3d at 754. "A motion to intervene may still be timely even if all the

factors do not weigh in favor of a finding of timeliness." *John Doe No. 1 v.*

*Glickman*, 256 F.3d 371, 376 (5th Cir. 2001).

Intervenors have acted promptly in light of the upcoming change in

presidential administration and its impact on their interests in this action.  The

incoming administration's position will not affect the government's litigation

positions in this matter until after January 20, 2025.  Intervenors have reasonably—

and, as indicated by the government's continued defense of the Rule, correctly—

relied on the government's "continued defense of the . . . [Rule] through the  . . .

election, and . . . even into the new year." *Cook Cnty., Illinois v. Texas*, 37 F.4th

1335, 1341–42 (7th Cir. 2022), *cert. denied sub nom. Texas v. Cook Cnty.*, 143 S.

Ct. 565 (2023).  Now that the administration will imminently change, Intervenors

can no longer "count on [the government] to defend the challenged regulation, [and]

. . . must be allowed to intervene to ensure the regulation's continued defense."

*Cook Cnty.*, 340 F.R.D. at 45.

Intervention will cause no prejudice to the Court or the parties in this matter,

which is the "most important consideration" in evaluating timeliness.  *McDonald v.*

*E.J. Lavino Co.*, 430 F.2d at 1073 (5th Cir. 1970).  Intervenors are not seeking to

modify the schedule in this matter; to the contrary, the purpose of the proposed intervention is to ensure that the Final Rule is appropriately defended and that this matter comes to resolution in a timely manner. The only consequences that intervention will have for Plaintiff-Appellants are those commonly associated with an appeal "and would have arisen regardless" of whether intervention was sought earlier. *Ross*, 426 F.3d at 756. These circumstances are insufficient for a finding of prejudice. "Prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation." *Glickman*, 256 F.3d at 378 (quoting *Espy*, 18 F.3d at 1206); *see also Cameron*, 595 U.S. at 281–82 (the raising of issues by intervenors that could have been raised on appeal by prior party did not give rise to prejudice).

Denial of intervention, in contrast, would deprive Intervenors the opportunity to assert and defend their interests in the Final Rule. Following the promulgation of the Final Rule, Intervenors (and co-plaintiffs) and the CFPB stipulated to the dismissal of their prior suit. *See* Stipulation of Dismissal, Doc. No. 73, *California Reinvestment Coalition, et al. v. Chopra et al.*, Case No. 4:19-cv-02572-JSW (N.D. Cal. April 5, 2023). In the event that the CFPB fails to robustly defend the Rule it promulgated as a result of its settlement with Intervenors, or improperly acquiesces to additional delay in its implementation via this proceeding, Intervenors would be without adequate recourse to protect their interests.

10

## II.    Intervenors Have an Interest in the Regulation that is the Subject of this Action.

To intervene under Rule 24(a)(2), an intervenor must have a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) (internal citations omitted). "Non-property interests are sufficient to support intervention when . . . they are concrete, personalized, and legally protectable." *Texas*, 805 F.3d at 658. An intervenor need not meet the more stringent requirements of standing: an interest satisfies the requirement "if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* at 659. And if a public interest group seeks to intervene or a case concerns a matter of public interest, the "interest requirement may be judged by a more lenient standard." *Brumfield*, 749 F.3d at 344 (internal citation omitted). This Court broadly construes the interest requirement: "[I]n the intervention area, the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992).

Intervenors' interests are precisely the sort of direct, substantial, and legally protectable interests contemplated by Rule 24(a)(2). Intervenors have a unique interest in the timely promulgation of the CFPB's Rule implementing Section 1071,

because Intervenors' prior litigation directly led to the promulgation of the Final Rule. That litigation required significant time and effort.

Beyond the settlement, the same interests that gave rise to that litigation continue to be at issue: Intervenors (and the public) have waited nearly fifteen years for a rule to be finalized so that the data that Congress mandated be collected and reported become available. Intervenors' inability to access data required to be collected and published pursuant to Section 1071 inhibits their ability to advocate, educate, and issue reports about access to credit; improve access to capital for small business owners, particularly those in Latino and immigrant communities; and work with lenders to arrange investment in low-income communities of color. *See generally* Kraninger Amended Complaint. The CFPB's abandonment of a robust defense of the Final Rule or improper acquiescence to delay the implementation of the Final Rule would directly implicate Intervenors' rights and interests. And, given that this motion is timely and will not lead to further delay of these proceedings, intervention is compatible with efficiency and due process.

### III.  Failure to Defend the Final Rule, or Further Delay in its Implementation and Enforcement, will Impair or Impede Intervenors' Ability to Protect their Interests.

As detailed above, Intervenors have significant interests in the outcome of this case, including affirmance of the District Court's decision granting summary judgment to Defendants-Appellees and timely implementation of the CFPB's Final

Rule. In contrast, Plaintiffs-Appellants have sought to introduce additional delay, including by seeking multiple stays of the Rule. *See, e.g.*, Doc. No. 124, *Texas Bankers Association, et al. v. Consumer Financial Protection Bureau, et al.*, Civil Action No. 7:23-CV-144 (S.D. Tex. Oct. 15, 2024); Doc. No. 9, Plaintiffs' Opposed Motion for Stay Pending Appeal (Oct. 30, 2024). Intervenors' prior suit was necessitated by the undue delay of the CFPB's rulemaking in the first instance. Were the CFPB to attempt to acquiesce to delay the Rule's effective date via these proceedings, it would impair Intervenors' interests in implementation of the Rule and the reporting of 1071 data that is critical to Intervenors' activities, and would impede Intervenors' ability to protect those interests.

An agency may only revise a regulation—including changing a compliance date—by following procedures set forth in the APA for issuing a new or revised regulation. *See* 5 U.S.C. § 553; *see also, e.g., Clean Water Act*, 936 F.3d at 314 (explaining that "modification of effective dates is itself a rulemaking" that requires compliance with APA procedures); *Clean Air Council*, 862 F.3d at 8–9, 14 (vacating agency stay of its own rule announced without notice-and-comment rulemaking); *Open Cmtys. All.*, 286 F. Supp. 3d at 162–63 (similar, and collecting citations). If the CFPB instead attempts to improperly delay implementation of the Final Rule via acquiescence in these proceedings—thereby evading the APA requirements—it would impede Intervenors' ability to protect their interests.

The delay in the promulgation of an effective 1071 regulation has already required significant outlay of time, effort, and resources by Intervenors; led to disinvestment in the communities that Intervenors serve; and impaired Intervenors' ability to work with stakeholders across the financial and regulatory sectors to improve lending practices, provide capital to small businesses, and ensure appropriate enforcement of federal fair lending and other laws. *See generally* Kraninger Amended Complaint. The Final Rule, and the data reporting and transparency it will engender, will address those injuries. Absent intervention, Intervenors' ability to protect those interests will be impaired.

## IV.    No Party to this Matter Adequately Represents Intervenors' Interests.

The burden of proving that the existing parties do not adequately represent Intervenors' interests is minimal. *Glickman*, 256 F.3d at 380. "The potential intervener need only show that the representation *may* be inadequate." *Id.* (quoting *Espy*, 18 F.3d at 1207); *see Brumfield*, 749 F.3d at 346 ("We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires."); *id.* (lack of unity in all objectives supports finding of inadequate interest); *Heaton*, 297 F.3d at 425. Lack of adequate representation can be shown even in cases where the intervenor's interest "may diverge in the future, even though, at [the time of

14

intervention] they appear to share common ground." *Heaton*, 297 F.3d at 425. Here, that showing is amply made.

The interests of the CFPB after the change of administration are very likely to diverge from those of Intervenors. Under President Trump's previous administration, the CFPB halted progress towards implementing a Section 1071 rule and ultimately attempted to table the regulation indefinitely. The replacement by the administration of then-Director Richard Cordray with Acting Director Mick Mulvaney and, subsequently, Director Kathleen Kraninger, froze the CFPB's already-delayed timeline for implementing Section 1071. This included disengaging from discussions about the importance of Section 1071, firing all 25 members of the CFPB's Consumer Advisory Board—many of whom had advocated to the CFPB for implementation of Section 1071—and indefinitely delaying the timeline for implementation of Section 1071 in favor of unrelated discretionary activities which, unlike Section 1071 implementation, were not mandated by Congress. *See* Kraninger Amended Complaint at ¶¶ 36–43.

Intervenors' concern that the incoming administration will adopt the same approach to the Small Business Lending Rule the CFPB took during President Trump's first term is well founded. Although President-Elect Trump has not yet announced plans for CFPB leadership under his administration, he has appointed Elon Musk, among others, to advise on and "slash" regulations. *See* Donald J.

Trump (@realDonaldTrump), truthsocial.com (Nov. 12, 2024, 7:46 PM), https://truthsocial.com/@realDonaldTrump/posts/113472884874740859.  Mr. Musk announced his intent to "[d]elete CFPB."  Elon Musk (@elonmusk), X (Nov. 27, 2024, 12:35 AM), https://x.com/elonmusk/status/1861644897490751865.

Intervenors reasonably expect a significant risk that new CFPB leadership will either attempt to improperly acquiesce to delay implementation of the Rule via these proceedings, or will otherwise cease to robustly defend the merits of the Final Rule, either of which is sufficient to establish that Intervenors' interests are not adequately represented.

## CONCLUSION

For the foregoing reasons, the Court should grant Rise Economy and NALCAB's motion to intervene.

Dated:

January 17, 2025

Respectfully submitted,

*/s/ Rachel L. Fried*

Rachel L. Fried
Robin F. Thurston
DEMOCRACY FORWARD FOUNDATION
P.O. Box 34553
Washington, DC 20043
rfried@democracyforward.org
rthurston@democracyforward.org

*Counsel for Intervenors*

## CERTIFICATE OF COMPLIANCE

This filing complies with the length limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 3,735 words.

This filing also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Fifth Circuit Rule 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Baskerville Old Face font.

Dated:                                                    Respectfully submitted,

January 17, 2025                                    */s/ Rachel L. Fried*
                                                              Rachel L. Fried
                                                              *Counsel for Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, the foregoing document was filed

using the CM/ECF system, which will effect service on all parties.

Dated:                                          Respectfully submitted,

January 17, 2025                                */s/ Rachel L. Fried*
                                                Rachel L. Fried
                                                *Counsel for Intervenors*